CHARLES F. BOCHTERLE *vs.* IZETTE E. SAUNDERS.

NOVEMBER 10, 1913.

PRESENT: Johnson, C. J., Parkhurst, Sweetland, Vincent, and Baker, JJ.

*(1)  Easements.  Adverse Possession.*

Upon the question of title by adverse possession by respondent over a portion of a right of way, an agreement by respondent with complainant by which respondent agreed to remove so much of a house as stood upon the right of way on, or before a certain date, must be construed as affording some admission upon her part that she had no claim either by adverse possession or otherwise to any portion of the right of way.

*(2)  Specific Performance.  Contracts.  Consideration.*

Although the quesion as to whether or not respondent's house was actually located upon a right of way claimed by complainant, was disputed by respondent, an agreement by respondent to remove the portion of the house claimed to project, in consideration that she should have a stated time to effect such removal, is based upon an adequate consideration, entitling complainant to performance of the agreement.

*(3)  Equity.  Laches.*

To bar one seeking equitable relief, the court must find not only that there has been inexcusable delay in the assertion of his rights, but that such delay has been the means of placing the respondent in a more unfavorable position.

*(4)  Easements.  Cessation of Use.*

Where a right of way had been used more or less frequently both prior and subsequent to the time complainant acquired the property bounding thereon, and respondent from time to time recognized its continued existence by filling it in with a view to improving its condition as a thoroughfare, there is no evidence of such cessation of use as would defeat the right of the complainant therein.

*(5)  Easements.  Equitable Relief.*

An encroachment of 18 inches by a dwelling-house upon a right of way thirty-three feet in width which does not in any practical way impede or embarrass the dominant estate in its use and enjoyment, and where its removal would subject the respondent to an expense of $500 in moving the house back or to an expense of $100 in cutting off the projection, at the same time reducing the dining room to a size which would render it useless or exceedingly inconvenient for the purposes for which it was intended, is not such as to entitle complainant to equitable relief, but he will be remitted to his remedy at law.

*(6)   Specific Performance.*

Specific performance will be denied where the relief sought would be of no practical benefit to complainant, but would cause trouble, inconvenience and expense to the respondent.

BILL IN EQUITY.   Heard on appeal of respondent and sustained and decree of Superior Court reversed.

VINCENT, J.   This is a bill in equity brought by the complainant in the Superior Court alleging that he is the owner of a certain tract of land in the District of Narragansett and that he is seized of a right of way, appurtenant thereto, leading from Caswell street, in the village of Narragansett Pier, to his said land, such right of way being of the width of thirty-three feet, and that the respondent, without any right or permission so to do, has built and continues to maintain a dwelling-house which projects over, or to some extent stands upon and obstructs, such right of way.

The complainant further alleges that the respondent entered into an agreement with him in writing wherein and whereby the respondent duly obligated herself to remove said building or dwelling-house from said right of way.

The complainant prays that the respondent may be compelled by decree of court to remove the said dwelling-house from said right of way and to perform her contract so to do according to the terms thereof.

The respondent in her answer neither admits nor denies the complainant's title to the right of way, but she (1) denies that said dwelling-house encroaches upon the same, (2) sets up a title by adverse possession to the land upon which her dwelling-house is situated, and (3) that the agreement to remove the building or the projecting portion thereof was made without knowledge, information or remembrance as to where the said right of way was, and was also made upon the misrepresentation and deceit of the complainant and hence without consideration.

By a decree of the Superior Court the case was referred to a special master in chancery to hear and determine the issues

therein. After hearing the testimony presented by the respective parties to the suit, the master made his report to said Superior Court setting forth his findings: (1) that the complainant is seized of the right of way described, the same being of a width of thirty-three feet; (2) that the said respondent built an addition to her house in 1895, which extended over the south line of the said right of way to the extent of eighteen inches; (3) that said projection has never been removed; (4) that although the ancestors in title of the said complainant made no apparent use of the said right of way, nevertheless, that the complainant upon taking possession of the property to which said right of way is appurtenant began to use the said right of way and several times protested to the respondent against the projection of her building into said right of way; (5) that although the said respondent did do some filling in of the said right of way such filling did not defeat any of the rights of the complainant in and to such right of way; (6) that the mere nonuser of said right of way by the complainant and his ancestors in title does not defeat the right of the said complainant in and to said right of way; (7) that the agreement made between the complainant and respondent in which the latter obligated herself to remove the building from the right of way is valid and binding on the parties thereto; and (8) that said complainant is entitled to have said projection removed from said right of way both under the said agreement and as a matter of law.

Upon the coming in of the master's report and the filing of the respondent's objections thereto, the case was sent back to the special master to take further testimony and for further findings. Additional testimony was taken and the master filed a supplemental report setting forth (1) that the grant of the right of way in dispute was given originally in such a manner as to convey a good title to the complainant; (2) that the respondent has not acquired title by adverse possession to that portion of the land in said right of way over which her house projects; (3) that if the said respondent

has acquired title by adverse possession, the complainant is·
entitled to the removal of the projection complained of;
through a specific performance of the agreement between·
himself and the respondent; and (4) that the equitable relief:
asked for would not inflict upon the respondent an expense·
disproportionate to the relief sought.

The respondent took exception to the 1st, 2nd, 4th, 5th,.
6th, and 8th of the master's findings as set forth in his:
original report, and to the 2nd, 3rd, and 4th findings as set.
forth in the supplemental report.

After hearing the respondent upon her exceptions to both·
reports of the master, the Superior Court entered a decree·
confirming all of the master's findings and ordering the·
specific performance of the before-mentioned agreement and
the removal of the portion of the dwelling-house which had¯
been found to extend over and upon the said right of way.

From this decree of the Superior Court the respondent has·
taken an appeal.

It appears from the evidence, including plats, that the·
complainant is the owner of a tract of land fronting southerly
on Rodman street, in the village of Narragansett Pier, which·
extends back from said Rodman street in a northerly direc--
tion, a distance of about 296 feet. The rear end of complain-
ant's lot is connected by a right of way thirty-three feet in
width, extending therefrom westerly to Caswell street, the
latter street intersecting and running at right angles with
Rodman street, before-mentioned. The complainant pur-
chased his lot in November, 1900. The right of way had
previously existed. Upon the southerly side of said right
of way, at the corner of Caswell street, the respondent owned
a lot of land with a dwelling-house thereon, which came to her
in August, 1893, upon the death of her sister, the former
owner thereof. In 1895 the respondent built an addition
to her said house, extending it in a northerly direction. This
extension was built by the respondent apparently without
any knowledge on her part as to the location of the southerly
line of the right of way and without any attempt to ascer-

tain where it was. Such extension encroached upon the right of way to the extent of eighteen inches and it has never been removed. That the respondent's house extends beyond the southerly line of the right of way, a distance of some eighteen inches, as the complainant claims, does not seem to be seriously disputed.

(1)    But the respondent urges upon the court that, whatever view may be taken of the other questions involved in the case, she has clearly acquired a title by adverse possession to that portion of the right of way upon which the northerly end of her dwelling rests, such possession having continued for more than the statutory period of ten years. To establish a title by adverse possession the facts necessary to bring into operation the statute must be clearly and satisfactorily shown. The evidence taken before the master shows that the complainant disputed the respondent's right from the time that he purchased his land in 1900, and the respondent so testified herself. There is also testimony as to several conversations between the complainant and respondent wherein the respondent's right to encroach upon the right of way was disputed, and in which conversations, according to the complainant's testimony, the respondent promised to remove that portion of the house which was over the line. The statements of the respondent upon this question of adverse possession are somewhat inconsistent and unsatisfactory, especially where she says that she first heard from the surveyor in October, 1910, that her house was on the right of way, and at another time that the complainant disputed her right when he first bought his land there in 1900. The respondent also testified that she did not claim that the right of way belonged to her or that she owned any of the land included therein. Later, in November, 1909, she executed an agreement, with the complainant, wherein she agreed to remove so much of the house as stood upon the right of way on or before the first day of July, 1910. This agreement, we think, must be construed as affording some admission upon her part that she had no

claim, either by adverse possession or otherwise, to any portion of the right of way. We do not think that the evidence supporting the respondent's claim to title by adverse possession is sufficiently clear and satisfactory to justify us in finding in her favor upon that point.

(2) As to the agreement between the complainant and respondent regarding the removal of the portion of her house which encroached upon the right of way, we do not find any sufficient evidence to warrant us in saying that such agreement is not valid. Assuming that the question as to whether the respondent's house was actually located upon the right of way or not, was disputed by the respondent, although there seems to have been very little, if any, dispute about it, the respondent entered into an agreement whereby she agreed to remove the offending portion of her dwelling in consideration that she should have the time from November, 1909, to July, 1910, to effect such removal, which would be a sufficient consideration.

There is no sufficient evidence of laches on the part of the complainant's predecessors in title nor does it seem to us that the complainant himself has been guilty of laches in asserting his rights. There is testimony that upon acquiring the property he immediately disputed the right of the respondent to maintain any portion of her dwelling upon (3) the right of way; that from time to time they had conversations about it in which such right was disputed; and that the respondent was well aware that the complainant was threatening to bring suit against her. The complainant also testifies as to the respondent's promise to remove her building, she finally agreeing in writing so to do, and testifying that she did not claim the right of way. To warrant the conclusion that the complainant has been guilty of laches which would bar him from the remedy which he seeks, we should find not only that there has been some inexcusable delay in the assertion of his rights, but that such delay has been the means of placing the respondent in a more unfavorable position. In the present case the testimony does not

justify such a conclusion. The respondent has made no further improvements or changes in her house since 1895 and the remedy which the complainant seeks would be no more disastrous to her interests now than it would have been in 1895 or in 1900, when the complainant acquired his property.

There does not appear to have been any such cessation in the use of this right of way as would defeat the right of the complainant therein. There is testimony that it had been used more or less frequently, both prior and subsequent to the time when the complainant acquired his property bounding thereon. Besides the respondent from time to time recognized its continued existence as a right of way by filling it in with a view to improving its condition as a thoroughfare.

We think that the findings of the Superior Court that the complainant and his predecessors in title have not been guilty of laches in asserting their rights, that he has not lost his right of easement by ceasing to use it for the statutory period, that the respondent has not acquired title to the ground covered by her building by adverse possession, and that the agreement between the complainant and respondent relating to the removal of the encroaching portion of her house is valid and binding are correct.

The respondent claims that the so-called obstruction to the right of way does not in reality interfere with its use by the complainant and that, notwithstanding the same, he can as readily pass and repass between his premises and Caswell Street as he could after the house had been moved back a distance of eighteen inches; and that the relief which the complainant seeks will be of no real benefit to him, but would cause inconvenience to her and necessitate a disproportionate outlay of money upon her part and that, under such conditions, the court in the exercise of a wise discretion should leave the complainant to his remedy at law.

We do not see that it could reasonably be contended that so slight an encroachment upon a right of way, thirty-

three feet in width, could practically impede or embarass the complainant in its use and enjoyment. This being so, to compel the respondent to incur an expense of $500 in moving the house back or an expense of $100 in cutting off the projecting part, at the same time reducing her dining room to a size which would render it useless or exceedingly inconvenient for the purposes for which it was intended, would seem to be unreasonable and unnecessary in view of the fact that it could bring to the complainant no practical advantage.

(6)    Courts of equity, in the exercise of their discretion, have frequently refused to decree specific performance when the relief sought would be of no practical benefit to the complainant, but would cause trouble, inconvenience, and expense to the respondent, and such has been the policy of this court.

In the case of *Bentley* v. *Root*, 19 R. I. 205, where a brick building encroached upon a way to the extent of three feet and eight inches, but not so as to interfere with the use of the way by the complainant, this court said: "There can be no doubt of the right to object to an obstruction of a way, temporary or permanent, by one who has a title or easement therein. But, as said by Chancellor Williamson in *Bechtel* v. *Carslake*, 11 N. J. Eq. 500, 'the mere fact of an individual's encroaching upon the street by a building does not confer upon every one owning a house upon the street a right to invoke the jurisdiction of this court to prevent the encroachment. The party who seeks redress here in such a case, must show some special ground of equity.' The same rule was followed in *Chapin* v. *Brown*, 15 R. I. 579. . . . . Assuming all the obstruction which the complainant claims, still, as it does not interfere with his use of the way, a relief in equity would be of no real benefit to him, but the cause of great trouble to the respondents, we think, as in *Chapin* v. *Brown*, *supra*, we may properly leave him to his remedy at law."

We think that the present case comes clearly within the authorities referred to and calls for the exercise of the same discretion, and that the complainant should be left to such remedy at law as he may have.

The action of the Superior Court in confirming the findings of the master that the equitable relief prayed for, will not cause said respondent an expense disproportionate to the relief sought by the complainant does not meet with our approval, and for that reason the decree of the Superior Court is reversed and the case is remanded to that court with direction to dismiss the bill with costs.

*Wilson, Gardner & Churchill,* for complainant.
*Harold R. Curtis,* of counsel.
*Frederick C. Olney,* for respondent.