ELLEN DAY *vs.* JOHN H. EDMONDSON.

AUGUST 4, 1942.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

FLYNN, C. J. This is a bill in equity to enjoin the respondent from numerous alleged interferences with the complainant's use and enjoyment of her easement of way for passage over North avenue, a platted street in the city of Providence. After a hearing in the superior court upon bill, answer, replication and proof, a decree was entered, granting all of the mandatory and other injunctive relief prayed for; and the cause is before us upon the respondent's appeal from that decree.

The following facts appear in evidence: The complainant and respondent respectively are owners of adjoining lots of land located on the southerly side of North avenue, which is so laid out and designated on "Central Plat East Avenue belonging to Lydia C. Nichols." This plat was duly recorded by that owner on July 30, 1885 and hereinafter will be referred to as "central plat." North avenue appears thereon as a platted street 40 feet wide, extending from Hope street on the west to what is now Blackstone Boulevard on the

east. Blackstone Boulevard, hereinafter called the boulevard, and Hope street are accepted public highways.

Complainant's lot is numbered 48 on central plat. It was originally conveyed by Lydia C. Nichols to one Winsor and was conveyed by him to complainant and her husband, now deceased. Both conveyances specifically referred to that plat, lot number, and to North avenue. Respondent's three lots were mortgaged by the same original owner before the plat was recorded and were described therein by metes and bounds. Later, after foreclosure sale, they were conveyed by her mortgagee to one of respondent's predecessors in title; but admittedly that description coincides exactly with the lines of lots 45, 46 and 47 as they actually appear on central plat. Still later conveyances by respondent's more immediate predecessors in title referred specifically to those lot numbers, plat and to North avenue. Two of these lots are situated on the southerly side of North avenue and extend from the complainant's lot on the east to Hope street on the west.

All the land on central plat, excepting the above-mentioned lots, was conveyed by the original owner to The Proprietors of Swan Point Cemetery. In 1933 the city of Providence by resolution accepted a deed from The Proprietors of Swan Point Cemetery to a portion of said land including all the lots on central plat that were situated on the northerly side of North avenue between Hope street and the boulevard, to be held, developed and kept open for park purposes. Attached to the deed was a plat showing the lots and North avenue as they appear on central plat.

Between that time and 1936 the city's engineering department surveyed and established a proposed grade for North avenue from Hope street to the boulevard and set the bounds for the northerly line thereof. The city also cut the curb on Hope street for entrance to North avenue and filled in the latter street along its entire northerly side for a width of not less than 8 feet. On this portion it made a continuous sidewalk from Hope street easterly to the boulevard, thus pro-

viding easy access to and from the park and tennis courts by way of North avenue. This sidewalk from Hope street easterly for some distance was made of gravel or dirt, while the part nearest the boulevard was made of cement.

In 1938 the respondent, after many years of unquestioned use of North avenue in connection with his lot 47, filled in this avenue from Hope street easterly for about 140 feet, ending at or near the projection of the westerly line of complainant's lot. This was done to aid him in getting in and out of a two car garage which he had built on lot 47, adjoining the complainant's land. The portion filled in by respondent conformed approximately to the grade as fixed by the city. The fill was of clay, loam, gravel, ashes, rocks, *etc.*, most of which was obtained from excavations made on the boulevard while digging cellars and sewers. A bulldozer was used to level off the surface of the fill, whereupon the surface was raked and rolled down by heavy trucks.

Previously thereto, the land generally in that locality sloped or pitched downward from Hope street toward complainant's land, which was about 9 feet below the street level at the corner of Hope street and North avenue. Much of the intervening land was low and swampy. Complainant's way of passage over North avenue to Hope street had been cleared of brush and growth by herself and husband. This way showed a gradually increasing elevation from her lot for a short distance and then a greater and more abrupt rise as it approached Hope street. The complainant claimed also to have planted or cultivated flowers, rose bushes, shrubs and grass in North avenue to beautify her way and that the fill placed by the respondent was pushed over them so that they were smothered; and that he also cut down two trees.

While respondent was filling in North avenue, he was prevented by complainant from continuing the grade in front of her lot. As a result the fill ended substantially near her westerly line with a more or less abrupt bank, the height of which is disputed. Complainant also testified that the surface of this fill was uneven and inconvenient to travel

because of protruding rocks, and that it caused mud and water to concentrate in a pool in North avenue near her home more than formerly had been the case. Most of this evidence was denied by respondent.

The decree is more elaborate than appears in the following brief summary. After referring to several of the trial justice's findings upon certain evidence, it ordered and decreed substantially as follows: First, complainant "is entitled to use North Avenue . . . as a way or private street to and from her land." Second, respondent "has no rights whatsoever arising either from any private sources or as a member of the public in and to North Avenue as shown on the Central Plat." Third, respondent is directed "to remove at his own expense within sixty (60) days" all the fill which he has caused to be placed in North avenue and to restore the same to the grade as it existed previously and "to leave the same in substantially the same condition it was in prior to his filling in the said avenue," excepting that portion filled in by the city. Fourth, respondent is directed "to restore at his own expense and within five months" the condition of North avenue particularly as to the grass, flowers and shrubs as follows: 1. Plant grass and "put in whatever loam and other materials may be necessary to cause said grass to grow properly"; 2. Excludes from the requirement to remove the fill the portion placed there by the city; 3. Respondent is directed "to prepare four small beds for flowers, each approximately two feet by four feet, in North Avenue on the northeasterly side thereof at approximately the point where the Park fill ends"; 4. Respondent is directed to take "whatever steps may be necessary properly to prepare the ground where said shrubs and flowers will be planted in order that the same may grow." Fifth, respondent is enjoined from parking vehicles of any kind, directly or indirectly, or from allowing tenants or licensees of himself or any corporation or other business entity controlled by him, to park vehicles in North avenue or from using it or from consenting, directing, or allowing customers of respondent's stores to use North

avenue for parking. Sixth, respondent is "permanently enjoined from using North Avenue or any part thereof as a mode of ingress to or egress from the land owned by the respondent, or in any manner whatsoever in connection with said land", with a further provision concerning a condition not appearing in evidence. Seventh, complainant is awarded costs to be taxed in this suit.

The respondent contends that this decree is against the law and the evidence. Upon the record and evidence before us we agree to a large extent with this contention. The first paragraph, though substantially correct, would be less misleading by implication if the complainant's right to use North avenue were stated as an easement of way for passage rather than a right to use it as a "private" way. The second, third, fifth and sixth paragraphs contain findings and relief that are too broad and are not justified, in our opinion, upon the law and the evidence in this cause.

The trial justice properly refused, in the absence of certain necessary parties, including The Proprietors of Swan Point Cemetery and the city of Providence, to adjudicate complainant's alleged ownership of the title to North avenue by virtue of her claim of adverse possession; or to rest his decision thereon. But the nature and extent of the relief granted, including a sweeping mandatory injunction, is quite as complete as could have been granted if the complainant had been adjudged to be the absolute owner of the title to North avenue.

The decree is premised on her right to use North avenue for *all* purposes exclusive of any other person, notwithstanding the fact that the trial justice was bound to rest his decision solely upon her admitted easement of way, as appurtenant to lot 48, for mere purposes of ingress and egress. Moreover, the respondent was held to be an absolute trespasser on North avenue and not entitled from any source or for any reason to any use whatsoever of that platted street. In our opinion, such relief was granted on an erroneous view of either the law or the evidence; and, in any event, it was

far in excess of the relief that was required in equity to protect reasonably the complainant's enjoyment of her easement for passage over North avenue to Hope street.

When Lydia C. Nichols, the original owner, duly recorded the central plat and conveyed lot 48 by specific reference to that plat and to that lot as abutting on North avenue, which appeared as a platted street thereon, she made an offer of dedication. In those circumstances such offer or tender of dedication was irrevocable, so far as the grantor alone was concerned; and it could not be rescinded or revoked by her without the consent of the owners of all lots abutting on North avenue. *Marwell Const. Co.* v. *Mayor et al.,* 61 R. I. 314. See also *Chapin V. Brown,* 15 R. I. 579; *Clark* v. *City of Providence,* 10 R. I. 437, 440; *Brown* v. *Curran,* 83 A. 515, 518. There is no evidence that the owners of all the lots abutting on North avenue ever consented to a revocation or abandonment of the owner's offer of dedication; or that any owner had fenced across or built upon the street, or made any use of it that was inconsistent with the offer to the public and to the grantees of lots on North avenue to use it as a street. Nor is there any evidence that the city had rejected this offer. Therefore the offer of dedication was a continuing one and could be completed under either of two modes, (1) by acceptance by the city, or (2) by general public user for a sufficient period of time.

It appears that the city had not, up to the time of suit, expressly accepted the offer of dedication. But it is equally true that there is evidence that a resolution to accept it was pending in the city council and that certain work had been done upon North avenue by the city's engineering and park departments, which at least looks in the direction of an intention to accept the offer. At any rate, there is no evidence that the city had expressly or impliedly rejected such offer of dedication.

The evidence also shows some public user of North avenue for the purpose of access to and from the tennis courts and the park by way of the sidewalk constructed by the city, and

some additional user thereof by respondent and his invitees in connection with his lots. Whether or not this evidence was sufficient to complete the dedication of North avenue by public user, we need not decide because, on our view of the law and evidence, there was another controlling issue. Therefore we may assume, without deciding, that the trial justice was correct in finding that the evidence was not sufficient to establish a completed dedication of North avenue, by either acceptance by the city or by general public user, up to the time that suit was brought.

Notwithstanding such assumption, the offer of dedication of North avenue continued unless it was lawfully rejected, revoked, or abandoned. See *Marwell Const. Co.* v. *Mayor et al* and cases above cited. In our opinion, there is no evidence here to support any of these last-mentioned conclusions. Under those circumstances the grantees of lots abutting on North avenue and the public generally were entitled to use that avenue as a way according to the offer. Apart from any rights that respondent might also have as appurtenant to his lot 47, by possible necessity or otherwise, he had the same right to use North avenue as the general public. See *Allen & Reed, Inc.* v. *Presbrey,* 50 R. I. 53, 59. Therefore, it was error to hold that respondent and others of the public mentioned in the decree were absolute trespassers, as the trial justice apparently found, since they were entitled as members of the public generally to use North avenue so long as such user did not permanently obstruct or unreasonably interfere with and substantially injure the complainant's right also to use that street in passing to and from her lot.

If the complainant were entitled to enjoin members of the public from using this platted street in conformity with the continuing offer of dedication, then she alone, without the consent of the owners of the other lots abutting on North avenue, could bring about a revocation or abandonment of the offer of dedication, whereas the grantor who made the offer could not then rescind it without the abutting owners'

consent; and further, notwithstanding that the offer was then a continuing one, complainant alone could thereby effectually prevent any possible completion of dedication by general public user. In our opinion, therefore, even though North avenue had not become an accepted public highway under either mode of completed dedication, it was erroneous to hold that respondent and other members of the public had no right whatever to use that avenue, and that the complainant had the right to exclude the respondent and others from any use whatsoever thereof, as substantially set forth in paragraphs second, third, fifth and sixth of the decree.

Upon this view and in the absence of a finding that complainant had acquired by adverse possession sole ownership of the title to North avenue, she was not entitled to the mandatory injunction contained in the fourth paragraph of the decree requiring the respondent to restore, plant, grow, prepare and cultivate grass, flowers, gardens and shrubs. In connection with these matters, their existence in North avenue was not a part of or essential to the exercise of complainant's mere easement for purposes of passage to and from Hope street. Complainant had no exclusive right of way. The extreme mandatory relief granted by this paragraph of the decree, however, appears to have been based upon complainant's claim of absolute ownership of the street, which issue was not decided in this cause and should not have been the basis for relief.

The remaining question is whether the filling in of North avenue by respondent amounted to such a permanent obstruction or substantial interference with the use of complainant's easement as should be enjoined. The trial justice apparently found, in substance, that the respondent had caused or permitted such obstruction and interference, to the special injury of complainant's rights, thus entitling her to such injunctive relief. An examination of the evidence leads us to the conclusion that this finding rests to a large extent upon the complainant's evidence that: (1) Respondent's filling in of North avenue made it substantially

impassable and prevented access to complainant's lot by coal trucks and other vehicles; (2) that it was rendered less convenient for her personal travel because of an abrupt bank that remained at the end of the fill, extending across North avenue near the westerly line of her land; (3) that the fill was for a time soft, wet and muddy and caused more water to concentrate in a muddy pool in North avenue near the front of her lot; and (4) that the surface of the fill contained protruding rocks that made it uneven and inconvenient to pedestrians.

In our opinion, complainant's evidence as to the alleged impassability of North avenue is inconsistent with her own claims and with other evidence. One of the exhibits shows the picture of an automobile in front of her house. Unquestionably, this automobile had passed over the filled in portion of North avenue. Moreover, complainant asked certain relief, and received it in the fifth and sixth paragraphs of the decree, because she claimed that the respondent, his tenants, licensees, and other persons actually had been passing over, using and parking on this filled in part of North avenue with their trucks and automobiles to such an extent that complainant's right of way was being obstructed; and that the respondent had been using it regularly with vehicles to get in and out of the two car garage which he had built on his own lot adjoining complainant's land. These admitted facts hardly support a finding that the filling in of North avenue made it substantially *impassable* to vehicles, as complainant virtually contended.

It is apparently not denied that the surface of the fill follows substantially the grade as fixed by the city; that the general contour of land in that locality always pitched downward from Hope street in the direction of complainant's land; that complainant's lot was always about 9 feet below the grade at the corner of North avenue and Hope street; and that much of the land between Hope street and complainant's lot was generally swampy and low. Previous to the filling in of North avenue, complainant was required, if

going to Hope street, to travel upgrade; and more than half of the 9 feet of difference in elevations between her lot and that street had to be passed over shortly before she reached Hope street. By filling in North avenue according to the grade fixed by the city, a more uniform incline was made from complainant's lot to Hope street.

If the surface of that fill were free of protruding stones and were reasonably smooth and hard, we cannot agree that her way for passage was permanently obstructed or that passage over it was rendered so much more inconvenient that it required removal of the fill and restoration of the street to its former condition, at great expense to the respondent without any reasonable benefit to the complainant in the exercise of her mere right of way. Similar mandatory relief has been denied where it would provide no real benefit to the complainant but would cause substantial inconvenience and expense to the respondent, even where permanent building encroachments or other obstructions of the way were involved. See *Bentley* v. *Root*, 19 R. I. 205, 208; *Bochterle* v. *Saunders*, 36 R. I. 39.

Some question, however, does appear on the evidence concerning the alleged abrupt bank at the end of the fill and concerning the possible softness and unevenness of the surface and the protruding stones or rocks which might impede complainant's reasonable and convenient travel. The exhibits indicate some softness in the vicinity of the bank at the end of the fill near complainant's lot that might corroborate her testimony that it was for a time soft and inconvenient to travel and caused some wash of mud to appear in the street near complainant's land. Upon the conflicting evidence as to these last features of her claim, we are unable to say that the trial justice's findings were clearly wrong. In our opinion, however, the extent of a mandatory injunction to which she was entitled upon this record was a requirement that the respondent reasonably remove the abruptness of the bank in North avenue near complainant's westerly lot line and make the surface of the filled in portion of North

avenue reasonably free from protruding rocks and holes and make it reasonably level and hard by some adequate method of surfacing or rolling, or both. If this is done, we are of the opinion that it would not only remedy the complaints which complainant was entitled to make upon this record, but that it would provide a more convenient way for mere passage over North avenue from her lot line to Hope street.

The complainant appears to rely strongly upon the cases of *Kusiak* v. *Ucci,* 53 R. I. 36, 38, and *Pyper* v. *Whitman,* 32 R. I. 510, to support the finding that the respondent had no right even as a member of the public to use North avenue. We cannot agree with this contention. In neither of those cases was there a continuing offer of dedication by virtue of the owner's sale and conveyance of a lot by specific reference to a recorded plat on which a street was platted. In the first case there was no recorded plat or platted street or question of dedication involved; and in the second case, although a plat may have been intended or proposed, it was never recorded or attached to the deed. But where, as here, the plat is recorded and shows the street and a lot abutting thereon is sold by special reference thereto and there is no rejection of the offer by the city, there is an offer of dedication which the owner grantor alone, without the consent of the owners of lots abutting on the platted street, could not rescind or revoke. In our opinion, such an offer of dedication gives the public, as well as owners of the lots abutting on such platted street, rights to use it until the offer is lawfully revoked, rejected, or abandoned. See *Marwell Const. Co.* v. *Mayor et al., supra; Chapin* v. *Brown, supra; Brown* v. *Curran, supra; Clark* v. *City of Providence, supra; Allen & Reed, Inc.* v. *Presbrey, supra.*

Nor can we agree that the case of *Abney* v. *Twombly,* 39 R. I. 304, is controlling on the question of parking. The respondent in that case was enjoined from entirely blocking or obstructing the way of passage by parking vehicles *over the sidewalk;* but no injunction was entered to prevent the passing or temporary parking of vehicles otherwise in and

over the right of way. There is no evidence here of parking on the sidewalk.

Nor can we agree with complainant's apparent contention that the offer was impliedly extinguished or abandoned because it was not completed in a reasonable time. Applying to the evidence here the principles of law stated in *Simmons v. Cornell,* 1 R. I. 519, 523, we reach a contrary conclusion.

In our opinion, none of the other pertinent cases cited by the complainant holds anything inconsistent with the law as stated here and as applied to the admitted or uncontradicted facts presented in this cause. As stated previously, our decision does not turn on whether North avenue had become an accepted public highway by completed dedication; but turns rather upon the fact that, assuming the owner's offer had not yet become a completed dedication, it was still continuing and irrevocable under the existing circumstances, so as to give the respondent, either as an owner of land abutting on North avenue, or as a member of the public, a right to use reasonably that avenue as a way.

The appeal of the respondent is sustained, the decree appealed from is reversed in part and modified in part. On October 5, 1942, the parties may present to this court a form of decree, in accordance with this opinion, for entry in the superior court.

*Gerald W. Harrington, Bancroft Littlefield, Edwards & Angell,* for complainant.

*Harold W. Thatcher, Swan, Keeney & Smith,* for respondent.