December 17, 2019

**Supreme Court**

No. 2017-368-Appeal.
(NC 17-240)

Bruce Pollak                    :

v.                    :

217 Indian Avenue, LLC, et al.        :

NOTICE:  This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Bruce Pollak  :

v.  :

217 Indian Avenue, LLC, et al.  :

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Indeglia, for the Court.**  The plaintiff, Bruce Pollak (plaintiff), appeals from the grant of summary judgment in favor of the defendants, 217 Indian Avenue, LLC, James Moore, and Jane Moore (defendants), as well as from the denial of his cross-motion for summary judgment.  The matter was previously before the Court pursuant to an order directing the parties to show cause why the issues in the case should not be summarily decided.  In an order dated January 7, 2019, the Court returned the case to the regular calendar for full argument.  *Pollak v. 217 Indian Avenue, LLC*, 198 A.3d 531, 532 (R.I. 2019) (mem.).  "In doing so, we specifically direct[ed] the parties to brief the issue of whether there exists an express or implied right to obtain retroactive approval of construction plans and design specifications[,]" as well as to address "other issues that they consider appropriate[.]" *Id.*  The parties appeared before the Court on December 3, 2019, for oral argument.  For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

# I

## Facts and Travel

Although the facts of this case were laid out in this Court's order assigning the case to the regular calendar for full argument, we reiterate them here. They are largely derived from plaintiff's amended verified complaint.[1]

On December 18, 2015, defendants purchased residential property at 217 Indian Avenue, Portsmouth, Rhode Island, which abuts plaintiff's property. Both lots were created in 1960 subject to the same subdivision plan, which included certain restrictive covenants (the restrictive covenants or the restrictions). Paragraph three of the restrictions provides: "No building or buildings shall be erected, placed or altered on any lot until construction plans and specifications, and the plans showing the location of the structure have been approved in writing by a committee[.]" Paragraph four of the restrictions necessitates: "The location of any proposed two-story structure shall also be subject to approval of said committee." Under the restrictive covenants, a majority vote of the committee was required for such approval.[2]

Throughout January and February 2017, defendants demolished a one-story home on their property and began new construction at that same location. In the beginning of April 2017, plaintiff discovered that defendants were building what he categorized as a "three-story structure." The plaintiff contacted defendants via e-mail on April 10, 2017, complaining that defendants' construction violated the restrictions because defendants had failed to obtain the required approval. On April 13, 2017, plaintiff, through counsel, demanded that defendants cease and desist all construction. The defendants responded, arguing that the restrictive

---

[1] Plaintiff filed his amended verified complaint on June 9, 2017.
[2] We note that the location of the structure is not at issue here. A 1961 amendment to the restrictive covenants permitted a house to be built at its present location.

covenants were void, and requested a conference with plaintiff before plaintiff filed suit. Nevertheless, defendants continued construction.

Thereafter, in June 2017, plaintiff filed a civil action in Newport County Superior Court seeking "a temporary restraining order, preliminary injunction, permanent injunction, damages and other relief in connection with his claims for violation of restrictive covenants and breach of the duty of quiet enjoyment, arising out of [d]efendants' wrongful construction of a multi-story structure[.]"

After plaintiff commenced suit, defendants, on June 15 and 16, 2017, secured the approval for the already-commenced construction on their property from the owners of eight of the nine subdivision lots, plaintiff being the sole exception.[3]  The defendants then presented plaintiff with the approval, pursuant to the requirements of the restrictive covenants.

On July 6, 2017, defendants moved for summary judgment pursuant to Rule 56 of the Superior Court Rules of Civil Procedure, arguing that the procedural approval requirement of the restrictive covenants, which plaintiff alleged defendants had breached, was satisfied and therefore plaintiff's claim was moot.  The defendants emphasized that the remedy plaintiff sought would only be temporary, as defendants had already obtained approval from a majority of the other lot owners, and defendants could therefore rebuild the same structure again.

The plaintiff objected to defendants' motion for summary judgment and filed a cross-motion for summary judgment.  The plaintiff argued that defendants clearly violated the restrictive covenants in failing to get approval before they began construction, and he further averred that the restrictive covenants do not allow for retroactive approval.  Furthermore,

---

[3] Notably, the approval indicated that the committee members "were not aware that the committee, nor the approval process contemplated by the [r]estrictive [c]ovenants, had continued to be applicable or in effect for the erection, placement or alteration of buildings on any lot or to approve fencing on the lots[.]"

plaintiff urged the Superior Court to adopt, for the first time, the Restatement (Third) of Property: *Servitudes* §§ 6:10 and 6:13 (2000), which address, respectively, committee members' power to amend restrictions and whether the committee owed plaintiff a duty of good faith and fair dealing.[4]

On September 5, 2017, the hearing justice heard the parties' arguments on their cross-motions for summary judgment and issued a bench decision.[5] The hearing justice concluded that "it would be absurd to grant injunctive relief in this case to disassemble a house only to have [defendants] reconstruct it after [they] already received approval." He reasoned that the restrictions, when read as a whole, "appear to deal with a fluid process where approval may be gained in the middle of construction." The hearing justice explained that the restrictions do not contain language that would prohibit approval at any time from the beginning of construction through its completion, and he accordingly granted defendants' motion for summary judgment, dismissing all claims in plaintiff's amended verified complaint, and denied plaintiff's cross-motion for summary judgment. Judgment entered in favor of defendants; and, on October 12, 2017, plaintiff filed his timely notice of appeal to this Court.

## II

### Standard of Review

"A motion for summary judgment 'is designed to decide in an expeditious fashion cases presenting groundless claims[.]'" *Hexagon Holdings, Inc. v. Carlisle Syntec Incorporated*, 199 A.3d 1034, 1038 (R.I. 2019) (quoting *Gallo v. National Nursing Homes, Inc.*, 106 R.I. 485, 487,

---

[4] We pause to note that plaintiff did not name the committee or its members as defendants in this action. As such, we conclude that any claims plaintiff may hypothetically have against such parties are not properly before us.

[5] Along with their motion for summary judgment, which is now before this Court, defendants also filed a motion to dismiss James and Jane Moore as defendants. In granting defendants' motion for summary judgment, the hearing justice declared the motion to dismiss moot.

261 A.2d 19, 21 (1970)).  This Court reviews a hearing justice's grant of a motion for summary judgment *de novo*. *Id.*  "If we conclude, after viewing the evidence in the light most favorable to the nonmoving party, that there is no genuine issue of material fact to be decided and that the moving party is entitled to judgment as a matter of law, we will affirm the grant of summary judgment." *McGovern v. Bank of America, N.A.*, 91 A.3d 853, 857 (R.I. 2014) (quoting *Pereira v. Fitzgerald*, 21 A.3d 369, 372 (R.I. 2011)).

"Further, 'the nonmoving party bears the burden of proving by competent evidence the existence of a disputed issue of material fact and cannot rest upon mere allegations or denials in the pleadings, mere conclusions or mere legal opinions.'" *Bellevue-Ochre Point Neighborhood Association v. Preservation Society of Newport County*, 151 A.3d 1223, 1229 (R.I. 2017) (quoting *Newstone Development, LLC v. East Pacific, LLC*, 140 A.3d 100, 103 (R.I. 2016)).  Additionally, a demonstration of "mere factual disputes will not defeat summary judgment; 'the requirement is that there be no *genuine* issue of *material* fact.'" *Moura v. Mortgage Electronic Registration Systems, Inc.*, 90 A.3d 852, 856 (R.I. 2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "Where the facts suggest only one reasonable inference, the motion justice may properly treat the question as a matter of law." *Deutsche Bank National Trust Company, for Registered Holders of Ameriquest Mortgage Securities, Inc. v. McDonough*, 160 A.3d 306, 311 (R.I. 2017) (brackets omitted) (quoting *HK & S Construction Holding Corp. v. Dible*, 111 A.3d 407, 411-12 (R.I. 2015)).

## III

### Discussion

On appeal, plaintiff argues that the hearing justice erred in granting defendants' motion for summary judgment and denying his own motion for summary judgment.  Specifically,

plaintiff submits that the hearing justice erred in deciding that defendants did not violate the restrictive covenants when they failed to submit plans to the committee before construction of the house had commenced. The plaintiff contends that the restrictions do not envision retroactive approval of construction. He further asserts that he should have been given notice and an opportunity to object to the planned construction.[6]

"This Court's objective in interpreting restrictive covenants is to achieve the delicate balance in favor of 'the free alienability of land while still respecting the purposes for which the restriction was established.'" *Ridgewood Homeowners Association v. Mignacca*, 813 A.2d 965, 971 (R.I. 2003) (quoting *Gregory v. State Department of Mental Health, Retardation and Hospitals*, 495 A.2d 997, 1000 (R.I. 1985)). In so interpreting, "we give the words of a restrictive covenant 'their plain and ordinary meaning unless a contrary intent is discernible from the face of the instrument.'" *Id.* (quoting *Gregory*, 495 A.2d at 1001). Cases involving the interpretation of restrictive covenants must be decided on a case-by-case basis because they "present such a wide spectrum of differing circumstances[.]" *Hanley v. Misischi*, 111 R.I. 233, 238, 302 A.2d 79, 82 (1973); *see Farrell v. Meadowbrook Corporation*, 111 R.I. 747, 750, 306 A.2d 806, 808 (1973) ("Controversies involving the interpretation of restrictive covenants must be decided on a case-by-case basis.").

We have said that "[c]ourts generally have wide discretion in making remedial choices when the equitable enforcement of restrictive covenants is at issue." *Cullen v. Tarini*, 15 A.3d

---

[6] At oral argument, plaintiff made a bare assertion that, in the alternative to injunctive relief, he may have a claim for compensatory damages. The plaintiff, however, has cited no law or claim of error in his briefings before this Court on that issue. As such, we treat that issue as waived. *See Giddings v. Arpin*, 160 A.3d 314, 316 (R.I. 2017) (mem.) ("This Court has held that 'simply stating an issue for appellate review, without a meaningful discussion thereof or legal briefing of the issues, does not assist the Court in focusing on the legal questions raised, and therefore constitutes a waiver of that issue.'") (brackets omitted) (quoting *Giammarco v. Giammarco*, 151 A.3d 1220, 1222 (R.I. 2017)).

- 6 -

968, 982 (R.I. 2011) (citing Restatement (Third) Property: *Servitudes* § 8.3, cmt. *b* at 494-95). "[C]ases involving the enforcement of restrictive covenants must be decided 'on an ad hoc basis' depending upon the circumstances of the case." *Id.* (quoting *Martellini v. Little Angels Day Care, Inc.*, 847 A.2d 838, 842 (R.I. 2004)).

Although we agree with plaintiff that paragraph three of the restrictive covenants provides that a landowner must obtain the committee's written approval prior to erecting a structure on any lot, application of such language here would lead to a Pyrrhic victory.[7] It is clear from the facts of this case that, if plaintiff were to prevail and be granted injunctive relief, defendants would be required to tear down all or part of the already-approved home. The hearing justice noted as much when he stated that "it would be absurd to grant injunctive relief in this case to disassemble a house only to have [defendants] reconstruct it after [they] already received approval." We agree with this assessment.

We have said that "[c]ourts of equity, in the exercise of their discretion, have frequently refused to decree specific performance when the relief sought would be of no practical benefit to the complainant but would cause trouble, inconvenience, and expense to the respondent, and such has been the policy of this [C]ourt." *Bochterle v. Saunders*, 36 R.I. 39, 46, 88 A. 803, 806 (1913). Furthermore, "mandatory relief has been denied where it would provide no real benefit to the complainant but would cause substantial inconvenience to the respondent, even where permanent building encroachments or other obstructions of the way were involved." *Day v. Edmondson*, 68 R.I. 382, 393, 27 A.2d 904, 909 (1942).

---

[7] A Pyrrhic victory is defined as "[a] victory that is offset by staggering losses." The American Heritage Dictionary of the English Language 1436 (5th ed. 2011). It is a reference to Pyrrhus, "King of Epirus (306-302 and 297-272 [B.C.]), who defeated the Romans at Heraclea (280) and Asculum (279) despite his own staggering losses." *Id.*

We conclude that the relief sought by plaintiff would be a substantial inconvenience to defendant and provide no real benefit to plaintiff; it would merely delay the inevitable. *See Day*, 68 R.I. at 393, 27 A.2d at 909. While defendants failed to get approval prior to building, as required under the plain language of the restrictive covenant, they ultimately received that approval. Certainly, this is a case that would cause "trouble, inconvenience, and expense" to defendants with no practical benefit to plaintiff, for the reasons we have noted herein. *See Bochterle*, 36 R.I. at 46, 88 A. at 806.

While our pronouncements have in the past resulted in what can be characterized as "extreme measures" to enforce restrictive covenants and to prevent trespass, those past cases are easily distinguishable. For example, plaintiff relies on *Cullen* to support his argument that the hearing justice erred in deciding that defendants did not violate the restrictive covenants. In *Cullen*, the landowner filed suit against his neighbors seeking a preliminary and mandatory injunction for the neighbors' violation of a restrictive covenant designed to protect ocean views. *Cullen*, 15 A.3d at 970-71. Unlike here, however, the defendant in *Cullen* ran afoul of the actual building requirements that were clearly created to protect the neighboring landowner's view: "(1) the house footprint exceed[ed] the 4,500 square-foot restriction; (2) 8 percent of the roof exceed[ed] the thirty-foot height limit; and (3) 6.5 percent of the structure extend[ed] beyond the 'no build line' outside the Homesite Building Area." *Id.* at 975.

At issue in the present case are not building requirements, but rather the requirement to submit plans for approval prior to building. Furthermore, nothing in the plain language of the restrictive covenants in this case indicates that the purpose of the building approval process was to protect a neighboring landowner's view. Rather, the purpose of the approval, as set out in paragraph three of the restrictions, is to ensure "quality of workmanship and materials" as well as

- 8 -

"harmony of external design with existing structures[.]"  As such, the restrictive covenant at issue in *Cullen* is discernibly different from the restrictive covenants at issue here.  Additionally, in *Cullen*, in concluding in favor of the plaintiff, this Court's opinion required that the defendant modify and rebuild portions of the house in compliance with the restrictive covenants. *Cullen*, 15 A.3d at 975, 980.  Here, if plaintiff were to prevail, defendants would be required to demolish all or part of the structure and rebuild an identical structure, because defendants have the required approval to build.

Our opinion in *Rose Nulman Park Foundation ex rel. Nulman v. Four Twenty Corp.*, 93 A.3d 25 (R.I. 2014), which exemplifies an "unfortunate situation," is also distinguishable. *Nulman*, 93 A.3d at 28.  In that case, the defendant erroneously constructed a $1.8 million home that encroached on the plaintiff's property, which had been dedicated as a public park. *Id.* at 26. It was not until the defendant sought to sell the property and the potential buyer had the land surveyed that the fault was discovered. *Id.* at 27.  Nevertheless, this Court upheld the trial justice's grant of a mandatory injunction and order directing the "defendants to remove the structure and other improvements from the land belonging to the" plaintiff. *Id.* at 26, 28.  Again, the facts in *Nulman* are distinct from the facts here, because plaintiff in the present case is not asking that the house be moved; the relief he requests would require defendants to tear down and rebuild an identical structure. *See id.*  Such a remedy would be fruitless. *See Guilford v. Mason*, 22 R.I. 422, 430, 48 A. 386, 388 (1901) (recognizing "[t]he maxim that the law does not compel one to do vain or useless things"); *cf. El Dia, Inc. v. Hernandez Colon*, 963 F.2d 488, 498 (1st Cir. 1992) ("[E]quity will not require a useless thing[.]") (quoting *Stewart v. United States*, 327 F.2d 201, 203 (10th Cir. 1964)).

In our view, "the facts suggest only one reasonable inference[.]" *Deutsche Bank*, 160 A.3d at 311 (quoting *HK & S Construction Holding Corp.*, 111 A.3d at 411).  Therefore, because there is no genuine issue of material fact left to be decided with regard to the defendants' motion for summary judgment, and because the requested relief for the defendants' breach of the restrictive covenants would lead to a futile result, we hold that the hearing justice did not err in granting the defendants' motion for summary judgment and in denying the plaintiff's cross-motion for summary judgment.

## IV

## Conclusion

For the reasons stated herein, we affirm the judgment of the Superior Court.  The record shall be returned to that tribunal.

# STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Bruce Pollak v. 217 Indian Avenue, LLC, et al. |
| **Case Number** | No. 2017-368-Appeal.<br>(NC 17-240) |
| **Date Opinion Filed** | December 17, 2019 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ. |
| **Written By** | Associate Justice Gilbert V. Indeglia |
| **Source of Appeal** | Newport County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Brian Van Couyghen |
| **Attorney(s) on Appeal** | For Plaintiff:<br><br>Thomas Connolly, Esq. |
| | For Defendants:<br><br>Stephen J. MacGillivray, Esq. |