JOHN A. CROWLEY & another [1] *vs.* J. C. RYAN CONSTRUCTION, INC.

Essex.   March 5, 1969. — May 8, 1969.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, & KIRK, JJ

*Way,* Private: grade, construction.   *Damages;* For change in grade, In equity.   *Equity Pleading and Practice,* Master: master's "reply to . . . objections."

A paper entitled "Master's Reply to . . . Objections," appended to the master's report together with the objections, was ordered struck where none of the conditions contemplated by Rule 90 of the Superior Court (1954) warranted the filing of the paper. [34]

The defendant in a suit in equity, the owner of a lot on the west side of a level, clearly defined and used dirt private way in a city, who raised the grade of the way about two and one-half feet and finished it with a blacktop surface and constructed curbings on both sides of the way, was rightly ordered to lower the way to its original grade and to remove the curbing constructed on its east side along the plaintiffs' lot where it appeared that the change in grade was made after the plaintiffs acquired their house and lot and was made for the purposes of a sewer system of the defendant and that the change interfered with the drainage from the plaintiffs' house and would necessitate raising it in order to align it properly with the new grade; it was without significance that the new grade complied with the grade shown on a subdivision plan which was approved by the planning board of the city under the subdivision control law and which included land of the defendant but not the plaintiffs' lot. [35–36]

A change by the defendant in a suit in equity in the grade of a private way which was wrongful as to the plaintiffs as owners of land on the way entitled them to a mandatory injunction for restoration of the grade to its original level and to compensation for any physical damage to their land, but not also to damages for diminution in the fair market value of their land caused by the change. [36]

BILL IN EQUITY filed in the Superior Court on August 30, 1965.

The suit was heard by *Thompson,* J., on a master's report.   Exception No. 3 to the master's report was to a finding that the plaintiffs were entitled to $2,000 damages "due to the acts of the defendant."   Paragraphs 1 and 2 of the

[1] Aurore L. Crowley, wife of John A.

final decree ordered the defendant to lower the grade of Crestshire Drive to its former level and to remove a curbing along the plaintiffs' premises; paragraph 3 ordered the defendant to pay the plaintiffs damages of $2,000.

*John P. Ford* for the defendant.

*Raymond M. Sullivan* for the plaintiffs.

KIRK, J. The case is before us on the appeals of the defendant J. C. Ryan Construction, Inc. (Ryan) from an interlocutory decree overruling exceptions to and confirming the master's report, from the final decree, and from an order of a judge denying a motion to strike a paper discussed later in this opinion.

The Crowleys sought and were granted a mandatory injunction to compel Ryan to lower the grade of Crestshire Drive, a private way, as it abuts their land and dwelling (parcel 11) in Lawrence and to remove the curbing constructed around parcel 11. There was also a claim for an award of damages.

We summarize the findings of the master as augmented by undisputed facts of record. In November, 1962, the Crowleys bought parcel 11 from a grantor who had built on several lots which were laid out on a recorded plan (No. 4223). The recorded plan bore the notation of the city clerk "Approval of this sub-division not required under Sub-division control Law by Planning Board." The Crowleys' deed refers to the recorded plan which shows a rectangular area bounded by a forty foot wide dirt roadway designated on three sides as Crestshire Drive and on the fourth side as Zanni Avenue. The Crowley dwelling faced north on parcel 11, which was the northwest corner of the rectangle formed by the roadway. The level of Crestshire Drive was the same on both the north and west sides of parcel 11. Under their deed the Crowleys owned the fee to the middle of Crestshire Drive as it abuts parcel 11 on both the north and west, and they had the right to pass and repass over Crestshire Drive and Zanni Avenue.

In October, 1964, the planning board of Lawrence approved a subdivision plan submitted by Ryan. The plan

was approved and recorded as No. 4358. It included about twenty lots mainly south of parcel 11 and necessary streets. Plan No. 4358 bears the notation that it supersedes a portion of plan No. 4223, specifying by number the lots on No. 4223 which are affected. Parcel 11 is not specified. The Crowleys had notice of the planning board hearing for the approval of the plan but they did not object. Included in plan No. 4358 was a lot on the west side of Crestshire Drive (the Ryan lot) roughly opposite parcel 11. Ryan owned the fee to the middle of Crestshire Drive and had the right to pass and repass over the whole length of Crestshire Drive. The Ryan lot was originally low and swampy. Ryan's predecessor in title had installed a sewer for the west side of Crestshire Drive. Ryan filled in the lot and built a house on it.

In July, 1965, when the Crowleys saw that Ryan was raising the elevation of Crestshire Drive on the west side of parcel 11, they at once complained to Ryan and later to the planning board, without avail. Ryan built up the old dirt surface and grade of Crestshire Drive about two and one-half feet and finished it with a hot top surface and granite curbings on each side. The elevations complied with those shown on the subdivision plan as approved by the planning board.

The present surface of Crestshire Drive on the west side of parcel 11 is two and one-half feet above the cellar door of the Crowley house, and the sill of the cellar window on the west side of the house is about a foot below the curbing installed by Ryan. "There is a sharp drop from the top of the curbing to the edge of . . . [parcel 11] of about two and one half feet. Under these conditions, the drainage from the . . . [Crowleys'] house towards Crestshire Drive on the Westerly side has been interfered with, and the whole foundation of the house would have to be raised two and one half feet to make it blend properly with the present level of Crestshire Drive." The Crowleys have sustained damages to their property in the sum of $2,000 as a result of Ryan's acts.

The lowering of the surface of Crestshire Drive to its original grade would mean that the sewer for Ryan's lot

would not have the needed earth cover (three feet) to prevent freezing. The lowering of the sewer three feet would prevent the gravity flow of sewage through the other streets of Ryan's subdivision.

The master appended to his report objections made by Ryan and also a paper entitled "Master's Reply to Defendant's Objections." The latter was "Filed by leave of Court."[2] The paper should have been ordered struck since none of the conditions contemplated by Rule 90 of the Superior Court (1954) warranted the filing of the paper. See *Anderson Corp.* v. *Blanch*, 340 Mass. 43, 49. The irregularity, however, was not reversible error. With but one exception, to be discussed at the end of this opinion, the master's report, read without reference to his "Reply," supported the decrees entered by the judge. Ryan's objections were essentially argumentative against the conclusions of fact made by the master. There was no request for a summary of the evidence. There was no motion to recommit. The findings were not mutually inconsistent, contradictory or plainly wrong. They are binding upon us. *Sykes* v. *Smith*, 333 Mass. 560, 565.

Ryan contends that he has the right reasonably to improve Crestshire Drive and that his right is superior to the Crowleys' to drain across that roadway. In support of his contention he relies upon *Guillet* v. *Livernois*, 297 Mass. 337. The *Livernois* case, however, is not applicable. It dealt with an unwrought, impassable, useless private way without a natural grade which an abutter with a right of way could lawfully make usable throughout its length and width by providing a reasonable grade, if he showed due regard to the rights and interests of others.

In the case before us the change in grade in Crestshire Drive was made by Ryan after it was clearly defined and in actual use as a level roadway and after the Crowleys had acquired their land and dwelling. The change was made by Ryan not to improve Crestshire Drive for purposes of travel but rather so that Ryan's subsequently installed

---

[2] This leave was granted by a judge other than the judge who entered the decrees.

sewer system would work as Ryan wanted it to work. And the change in grade was made without regard to any of the Crowleys' rights which were already established under their deed and were unaffected by the planning board's subsequent approval of Ryan's plan. *Toothaker* v. *Planning Bd. of Billerica,* 346 Mass. 436, 439–440, and cases cited. *Murphy* v. *Mart Realty of Brockton, Inc.* 348 Mass. 675, 678.

Indeed the *Livernois* case, in discussing the principle then under consideration, points to and distinguishes the rule which should apply to a situation like the one before us, citing *Killion* v. *Kelley,* 120 Mass. 47, where this court said at page 52, citing cases, "It is well settled that where there are several owners in common of a private way, each owner may make reasonable repairs which do not injuriously affect his co-owners, but he cannot make any . . . change in its grade or surface, which makes the way less convenient and useful to any appreciable extent to any one who has an equal right in the way." In applying the rule to the case the court in *Killion* v. *Kelley, supra,* at pages 52–53, specifically held that an abutting owner had no right and no court could grant him the right to raise a private way two and one-half feet above the level of the existing roadway so that another abutter would be required to adapt his land to the new level by construction or by grading even if he were to be paid the expenses of the adaptation. See *Draper* v. *Varnerin,* 220 Mass. 70. For a discussion of the latter principle, see *Geragosian* v. *Union Realty Co.* 289 Mass. 104, 108–109; *Lizzo* v. *Drukas,* 333 Mass. 242, 243; *Sheppard Envelope Co.* v. *Arcade Malleable Iron Co.* 335 Mass. 180, 188–189.

It follows from what we have said that the mandatory injunction was rightly granted. To consider, as argued by Ryan, "the reasonableness of the improvements" made by him on Crestshire Drive would be to contradict the legal effect of the facts found by the master. The increase in the elevation of the roadway was done without right. It was a wrong which caused injury to the Crowley parcel. The wrong was not mitigated by the new surface or the new

curbing. Also the findings do not persuade us, as Ryan "suggests" that the doctrine of equitable estoppel is applicable. See *Sheppard Envelope Co.* v. *Arcade Malleable Iron Co., supra,* page 186.

We have reserved for final comment the question of damages, found by the master to be $2,000. A decree awarding damages if sought in equity may properly be made if they are incidental to and part of the relief to which the party is entitled upon the evidence. See *Winslow* v. *Nayson,* 113 Mass. 411; *Alden Bros. Co.* v. *Dunn,* 264 Mass. 355, 363–364; *Codman* v. *Wills,* 331 Mass. 154, 159. Damages may not be awarded, however, if the award is inconsistent with the relief granted. We read the bill as primarily seeking relief in the form and nature of a mandatory injunction. We read the master's finding of damages as assessing the diminution of the fair market value of parcel 11 caused by the change in elevation made by Ryan. The Crowleys may not have both the restoration of the grade and the loss in value caused by the change in grade. See *McCarthy* v. *Lane,* 301 Mass. 125, 130; *Fenton* v. *Quaboag Country Club, Inc.* 353 Mass. 534, 539. It may be, however, that parcel 11 already has been physically damaged consequent upon Ryan's wrongful act and that compensation was intended to be awarded for it. In this respect the master's report is unclear.

The order (treated as a decree) denying the defendant's motion to strike the master's "Reply" is reversed, and an interlocutory decree is to be entered striking the "Reply." The interlocutory decree overruling the defendant's exceptions to the master's report and confirming it is modified by sustaining exception No. 3, and as so modified is affirmed. Our order as to the final decree must be in the alternative. If the Crowleys in writing within fifteen days after rescript disclaim damages, the final decree is modified by striking out paragraph 3, and as so modified is affirmed. If an award of damages is not disclaimed the final decree is reversed and the case is to be reheard on the issue of damages only. Thereafter a new final decree is to be entered which will

include paragraphs 1 and 2 of the original final decree and, if damages are found due upon such rehearing, a paragraph 3 ordering payment thereof by the defendant to the plaintiffs. In any event, the plaintiffs are to have costs of appeal.

*So ordered.*