**Charles F. and Elicia C. KELLEY,**
**plaintiffs**
vs.
**Dimitri TSIROYANNIS, defendant**

**No. 4860**

Superior Court
Commonwealth of Massachusetts

**December 3, 1981**

tiffs, Charles F. and Elicia C. Kelley (Kelleys) own residential property abutting the Tsiroyannis[1] land in the West Roxbury section of Boston. The Tsiroyannis backyard slopes downhill steeply, the property line dividing this parcel from the Kelley parcel running along the foot of the slope. The Tsiroyannis home is approximately 105 feet higher than the Kelley home, the distance in a straight line between the two buildings being approximately five feet before it sloped downward steeply toward the Kelley property. In 1973, the Tsiroyannises attempted to expand the level area of their backyard by filling. First·Costa Tsiroyannis cut certain trees in his backyard and rolled the cut trees horizontally against their stumps. Fill was brought in and packed against the retaining wall formed by these cut trees. The goal was to obtain an additional ten to fifteen feet of flat backyard area for the Tsiroyannis residence. In addition to dirt, the fill consisted of some rocks three inches in diameter, some rocks eight to nine inches in diameter, and at least one large enough to be fairly characterized as a "boulder". Chunks of road paving "hardtop" and cement were also included in the fill. Naturally, extending the backyard increased the angle of the slope between the Tsiroyannis and Kelley property.

The retaining wall erected from cut trees has proved inadequate. The "boulder" rolled down the hill coming to rest against a fence erected by the Kelleys and damaging it. More important, the fill eroded down the slope and, during the rains of the following spring (1974), rainwater washed down the

**John E. Keehan, Jr.,** counsel for plaintiff.
**William M. Leonard,** counsel for defendant.

## MEMORANDUM OF DECISION

This tort action seeks injunctive relief and damages arising out of an alleged private nuisance and trespass. The plain-

1. This action has been commenced against Dimitri Tsiroyannis alone. The state of the title was not proved by record evidence in this action. Costa Tsiroyannis, Dimitri's brother, testified that he owned the land with Dimitri and that Dimitri had moved out in 1977. On this record, therefore, any money judgment can run against Dimitri only, while injunctive relief will run against both Dimitri and Costa, since the latter has appeared and defended the action and has notice of all relevant aspects.

Tsiroyannis hill and spread out over the Kelley backyard, carrying with it a sandy, silty residue which covered the Kelley patio and surrounded the base of and path to an ornamental birdbath. After the spring rains, three to four inches of sand remained atop the normal, grassy groundlevel of the Kelley backyard.

The Kelleys complained in March, 1974, and the Tsiroyannises did no further filling after the complaint. The silt which had already been deposited on the Kelley backyard matted down the grass and caused it to rot out, requiring re-sodding at a cost of $480.00. The Kelleys also caused the rear of their lot to be re-graded in such a fashion as to largely prevent the silt from filtering onto their land. The court finds that the fair and reasonable cost of this work - actually just a small gully - to be $50.00. While these measures have been largely effective, a little silt still gets through.

The Tsiroyannises make two arguments in opposition to the Kelleys' claim for relief. First, they cite the long-standing rule[2] that:

> The right of an owner of land to occupy and improve it in such manner and for such purposes as he may see fit, either by changing the surface or erection of buildings or other structures thereon, is not restricted or modified by the fact that his own land is so situated with reference to that of adjoining owners that an alteration in the mode of its improvement or occupation in any portion of it will cause water, which may accumulate thereon by rains and snows falling on its surface or flowing on it over unusual quantities on other adjacent lands, or to pass into and over the same in greater quantities or in other directions than they were accustomed to flow.

Gannon v. Hargadon, 10 Allen 106, 109 (1865).

While this is the apposite rule were damage to have been done by water alone flowing from the Tsiroyannis land onto the Kelley land,[3] the problem here is that the water flowing from the Tsiroyannises' land carries with it silt and sand. The **Gannon** "common enemy" rule has no application to an actual trespass of solid material onto the land of another.

Recognizing this, the Tsiroyannises point out that the measure of damages for such a trespass is the diminution in the value of the Kelleys' property, **Mcmahon v. Krumrine,** 353 Mass, 511, 513 (1968) (Reardon, J.), and contend that there is insufficient evidence from which this court can ascertain any such damages. This court disagrees. While the diminution in value of the real estate is the proper measure of damages, such diminution can readily be calculated from the cost to repair and restore the real property to its value prior to the trespass. Replacement cost is a commonly used indicator of value and, recognizing that damages need not be proved with scrupulous nicety by a plaintiff who has been actually wronged, it is appropriate to award the $480.00 expended for re-sodding here.

Moreover, the court finds that, had the Kelleys not dug a gully across a back of their land, silt would have continued to infiltrate across their lawn, at least through November, 1979, the date of the trial of this action. The fair and reasonable cost of this re-grading cannot properly be said to be part of the restoration costs and thus cannot properly be added to a measure of damages concerned only with the dimunition in the value of the Kelley property due to the Tsiroyannises' tortious actions.

Nevertheless, in the circumstances of this case it is equitable to award the fair and reasonable cost of constructing the

2. The prospective alteration of this rule has recently been forecast by six Justices of the Supreme Judicial Court (four of whom continue to sit on the Court), such change to take place as of December 27, 1978. **Tucker v. Badolan,** 376 Mass. 907, 918-919 (1978) (Kaplan, J. concurring).

3. At no time has the Kelleys' basement been flooded by this water, and the Kelleys apparently do not complain of the water alone.

gully to the Kelleys as well. The Kelleys had no legal obligation to re-grade their own land. They might, instead, have pressed for the legal and equitable relief to which they are entitled and have secured a mandatory injunction to require the Tsiroyannises to erect a wall on the Tsiroyannis property sufficient to prevent silt from infiltrating onto the Kelleys' lawn. Having instead taken more immediate, economical action and altered their own property, the Tsiroyannises cannot be heard to complain if they are caused to pay for such an expenditure, since the alternative is to order the Tsiroyannises to errect a wall at much greater cost.

Apparently, despite the gully, some silt still seeps through. Such seepage appears not extensive, and one who has recovered a money judgment for the full extent of the dimunition in value of a particular property usually cannot also obtain a mandatory injunction. Crowley v. J. C. Ryan Construction, Inc., 356 Mass. 31, 36 (1969). Nevertheless,

> the readiness to grant injunctions in trespass cases derives from the historic notion that land is unique and that money is an inadequate substitute, see, Chesarone v. The Pinewood Builders, Inc., 345 Mass. 236, 240-241 (1962), and from the desire to avoid constitutional grounds which might rise if the trespass were permitted to be guise for "an informal exercise of private eminent domain.". Peters v. Archambault, 361 Mass. 91, 94 n.3 (1972).

Franchi v. Boulger, Mass. App. Ct. Adv. Sh. (1981) 1543, 1547. Therefore, a mandatory injunction requiring the Tsiroyannises to prevent any further seepage of silt onto the land of the Kelley's is appropriate.

In sum, the plaintiff Kelleys shall recover judgment in the amount of $530.00 with costs and statutory interest from the date of the complaint, and Costa and Dimitri Tsiroyannis, their agents, servants, employees, successors and assigns taking after the date of the recording of this opinion should it be recorded,[4] are permanently enjoined from continuing to allow any boulders, rocks, hardtop, cement, silt, sand, or other debris to be carried by the operation of erosion by water beyond their property line onto the land presently owned by Charles F. and Elicia C. Kelley.

It is so ORDERED.

By the Court,
**William G. Young**
Justice of the Superior Court

---

4. One who has not created a nuisance is, nevertheless, liable for knowingly allowing it to continue. Restatement (2nd) of Torts Section 839, Commended (1977), **Franchi v. Boulger**, Mass. App. Ct. Adv. Sh. (1981) 1543, 1545.