**RENAISSANCE DEVELOPMENT CORP.**

v.

**UNIVERSAL PROPERTIES GROUP, INC. et al.**

No. 2001–287–Appeal.

Supreme Court of Rhode Island.

April 30, 2003.

Samuel D. Zurier, Joseph DeAngelis, Providence, for Plaintiff.

Preston W. Halperin, Virginia Spaziano, Providence, for Defendant.

Present: WILLIAMS, C.J., FLANDERS and GOLDBERG JJ., and SHEA, J. (Ret.).

## OPINION

SHEA, Justice (Ret.).

The plaintiff, Renaissance Development Corp. (Renaissance), appeals from a final judgment denying its request for permanent injunctive relief from the actions of the defendants, 1324 Bald Hill Road LLC (1324 LLC) and Universal Properties Group, Inc. (Universal) (collectively, the defendants). At issue in this case is whether it was permissible for the defendants to deliberately erect a stone retaining wall on a portion of Renaissance's property that is subject to a cross-easement, when Renaissance expressly prohibited such action and when the encroachment could impede future development of its property. Renaissance maintains that the trial justice erred in finding that the circumstances surrounding the construction of the retaining wall constituted an "exceptional case" that precluded mandatory injunctive relief. We agree.

### Facts/Procedural History

Renaissance and 1324 LLC own adjoining parcels of land on the eastern side of Bald Hill Road in Warwick, Rhode Island. Renaissance leases its property to a restaurant called Chevy's. 1324 LLC's property is behind Chevy's and, when purchased, consisted of a wooded hillside with elevations that varied by up to 50 feet. Universal is the property developer that 1324 LLC retained to develop the lot.

On January 27, 1994, Renaissance and 1324 LLC's predecessor in interest, Socrates F. Chrissos (Chrissos), entered into a pre-construction agreement for purposes of creating a "cross-easement" to allow common passage to and from Bald Hill Road. The cross-easement would be located on adjoining strips of land owned by the parties and would apply to their successors

and assigns. The parties also entered into a "Construction and Maintenance Agreement" that provided for the payment of "construction costs, agent's fees, maintenance costs, insurance or any other costs on the 'easement area' or any taxes on improvements made within the 'easement area' * * *." Paragraph four of the agreement provided that:

> "Chrissos or his successor shall have permission to extend from the cross easement area a roadway to the interior of his property for future development."

On May 3, 1994, a document entitled "CROSS EASEMENT" was recorded in the Land Evidence Records of the City of Warwick describing the land involved, the rights of the parties, and the fact that the deed is permanently subject to, and governed by, the "Construction and Maintenance Agreement." Specifically, the cross-easement granted the parties:

> "the right to pass or repass on foot or motor vehicle over land of each other for purpose of joint access to and from Bald Hill Road (U.S. Route 2) (hereinafter referred to as the 'easement area') as set forth in Exhibits 'A' and 'B' attached hereto and as shown on that certain plat entitled 'Permanent Easement for Ingress and Egress Bald Hill Road * * *.'"

Exhibits A and B described with particularity the land that was being dedicated to the cross-easement by each party. Renaissance dedicated an approximately 275–foot–long strip to the cross-easement to provide ingress, while Chrissos dedicated an approximately 150–foot strip to provide the necessary egress. Apparently, the additional footage dedicated by Renaissance was to provide accessibility to the Chrissos lot behind Chevy's. Thereafter, in accordance with the cross-easement, Renaissance designed and constructed a roadway within the cross-easement.

In 2000, after purchasing the Chrissos lot, 1324 LLC and Universal began to develop the site to build a shopping center. In doing so, they sought to maximize the square footage obtainable from the site and considered various options to achieve that objective. The defendants eventually determined that they would level and grade the property and that the most efficient and economical method of achieving their goal was to employ the so-called "dig-and-fill" method. That method involved removing material from the hills and spreading it over lower-lying portions of the property. The result would be to raise the overall elevation of the property. As a direct consequence of these actions, a retaining wall was constructed to prevent the collapse of the material that had been used to fill the lower areas of the property.[1] Approximately 120 feet of the wall was on Renaissance's property within the easement area.

In November 2000, Renaissance filed a petition for permanent injunctive relief. In its petition, Renaissance asked the Superior Court to order defendants to remove that portion of the retaining wall located on its property. After a nonjury trial, the trial justice denied the plaintiff's petition. She found that: (a) defendants had chosen the best and safest design for the shopping center; (b) the retaining wall was necessary for 1324 LLC's reasonable enjoyment of its easement; (c) it did not unreasonably interfere with Renaissance's "servient tenement[;]" and, (d) this was an exceptional case meriting the denial of in-

---

1. It is interesting to note that the defendants constructed a Versa–Lok retaining wall, which merely involves stacking interlocking blocks and does not require any cement footings. Thus, the retaining wall may be removed readily without any concomitant destruction of the blocks.

junctive relief because such relief would cause great hardship to defendants while providing little benefit to Renaissance. Renaissance timely appealed.

Additional facts as necessary to this opinion will be supplied as needed.

## Analysis

Renaissance contends that defendants are committing a continuing trespass on its property and cites to *Santilli v. Morelli,* 102 R.I. 333, 230 A.2d 860 (1967) for support. It asserts that black-letter law mandates that injunctive relief be granted because defendants deliberately placed the retaining wall on Renaissance's property in the face of objection. They were not entitled to assert that the wall constituted an exceptional circumstance. In addition, Renaissance maintains that the *de minimus* effect exception is not available to defendants because the encroachment was deliberate and the loss of approximately 250 square feet could not be considered *de minimus.*

The defendants contend that there is no continuing trespass because the retaining wall lawfully was erected on a portion of 1324 LLC's easement. They maintain that the wall is necessary for its reasonable enjoyment of its rights under the easement and that, as such, it does not constitute a deliberate encroachment.

■ "A judgment in a nonjury case will be reversed on appeal [only] when it can be shown that the trial justice misapplied the law, misconceived or overlooked material evidence or made factual findings that were clearly wrong." *Town of West Greenwich v. A. Cardi Realty Associates,* 786 A.2d 354, 357–58 (R.I.2001) (citing *Forte Brothers, Inc. v. Ronald M. Ash & Associates, Inc.,* 612 A.2d 717, 721 (R.I. 1992)). We apply the same standard when reviewing the grant or denial of a permanent injunction. *Id.*

In this case, the easement at issue was entitled a "cross-easement." It granted easement rights in two adjoining strips of land to Renaissance and Chrissos, and their successors and assigns, for purposes of ingress and egress. 1324 LLC maintains that the pre-construction agreement specifically contemplated the future development of its back lot because the agreement gave it "permission to extend from the cross easement area a roadway to the interior of [its] property for future development." It maintains that to accomplish such future development, it was necessary for it to erect the retaining wall within the easement area.

■ We have stated previously that:

"[t]he right of the easement owner and the right of the landowner are not absolute, irrelative, and uncontrolled, but are so limited, each by the other, that there may be a due and reasonable enjoyment of both. It has been held that the rights of the owner of the easement are paramount, to the extent of the grant, to those of the owner of the soil, and it is an established principle that the unrestricted grant of an easement gives the grantee all such rights as are incidental or necessary to the reasonable and proper enjoyment of the easement." *Hickey v. Town of Burrillville,* 713 A.2d 781, 785 (R.I.1998) (quoting 17 Am.Jur. *Easements* § 96 (1938)).

However, in situations such as the one before us,

" 'where there are several owners in common of a private way, *each owner* may make reasonable repairs which do not injuriously affect his [or her] co-owners, but he [or she] *cannot make any * * * change in its grade or surface, which makes the way less convenient and useful to any appreciable extent to any one who has an equal right*

*in the way.'" Crowley v. J.C. Ryan Construction, Inc.*, 356 Mass. 31, 247 N.E.2d 714, 717 (1969). (Emphases added.)

See also *Ashland Pipeline Co. v. Indiana Bell Telephone Co.*, 505 N.E.2d 483, 487 (Ind.Ct.App.1987) (observing that "each concurrent easement owner has the right to make reasonable repairs, alterations, and improvements to the easement so long as such do not injuriously affect his co-owner"); *Lowe v. Bradford*, 305 N.C. 366, 289 S.E.2d 363, 367 (1982) ("[a]n owner in common in an easement is not entitled to make alterations which will make the easement appreciably less convenient to a co-tenant"); and, *Mehene v. Ball*, 22 Misc.2d 577, 194 N.Y.S.2d 28, 31 (N.Y.Sup.Ct.1959) (holding that "[w]hile the defendants were entitled to make such repairs as did not injuriously affect their co-users, they could not make any alteration of grade to the detriment of the plaintiff").

▮ Accordingly, when considering alterations and improvements to concurrent easements:

> "the issues to be examined are the reasonable necessity to the enjoyment of the easement and the injurious effect on other co-owners, the latter being of significance because courts have not interfered with alterations or improvements unless it was made to appear that the objecting party would be seriously inconvenienced in his [or her] own use of the easement." *Litzelswope v. Mitchell*, 451 N.E.2d 366, 370 (Ind.Ct.App.1983).

In the case before us, the trial justice found that the "Construction and Maintenance Agreement" contemplated the future development of 1324 LLC's site and that "[d]efendant needed to level the property in order to accomplish its goal of developing a shopping center." She found that although defendants could have lowered the elevation by removing the excess

material from the property, such actions probably would have been very costly. She also found that there were other options available to defendants that would not have involved constructing a retaining wall. Such alternate proposals included: "mov[ing] the road further back[,]" and "flattening the road into the site and then pitching up into the middle of the property." However, she accepted defendants' dismissal of these alternate proposals as "complex, costly and of questionable merit" and because they "would require guardrails and/or would probably cause drainage problems." In addition, she found that moving the road back:

> "would have reduced the number of parking spaces for shopping center customers. More importantly, it would have required [d]efendant to reduce the size of the shopping center from five to four [buildings]."

The trial justice then determined that "[d]efendant chose the best and safest method to develop its real estate" and "that all alternative methods were inferior to the dig-and-fill method selected by [d]efendant[.]" She found that "[t]he change in grade in the instant matter has not damaged [p]laintiff other than blocking its access to a small portion of its property" and that "[p]laintiff is not presently utilizing the area and has only speculative, uncertain and vague plans to do so in the future." Acknowledging that injunctive relief normally is available against the unlawful placement of a structure on property, the trial justice concluded that exceptional circumstances existed in this case to preclude the permanent injunction because it:

> "would be of little benefit to [p]laintiff, but would cause great trouble to [d]efendant. This is the exceptional case re-

ferred to in *Santilli* and in *Bentley [v. Root,* 19 R.I. 205, 32 A. 918 (1895)]." That determination was error.

■ Although we agree with defendants' contention that the pre-construction agreement contemplated future development of 1324 LLC's property, it did not permit defendants to encroach into the cross-easement area. Instead, it merely permitted defendants to extend a roadway *"from* the cross easement" into the interior of the property. The defendants assert that the encroachment was necessary for its reasonable use of the cross-easement and that, consequently, injunctive relief properly was denied. We disagree.

The defendants' deliberate encroachment into Renaissance's property was not necessary for its reasonable use of the cross-easement. The stated purpose of the cross-easement was to facilitate ingress and egress to and from Bald Hill Road. The defendants' encroachment did nothing to further that purpose or to improve the roadway. Instead, it served merely to enhance the developmental potential of 1324 LLC's property by benefiting the design of the shopping center. Since that was not the purpose of the easement, defendants' encroachment is a continuing trespass.

■ In *Santilli,* we observed the general rule that when there is a continuing trespass on an owner's land, he or she is entitled to a mandatory injunction. *Santilli,* 102 R.I. at 338, 230 A.2d at 863. However, when the:

"owner has suffered little or no damage because of the offending structure, or that it was erected *in good faith,* or that the cost of its removal would be greatly disproportionate to the benefit accruing to the plaintiff from its removal, * * * [the court has the discretion,] in exceptional cases * * * to withhold the coer-

cive relief contemplated by the general rule." *Id.* (Emphasis added.)

■ Conversely, in situations:
"where the encroachment was intentional, in that defendant proceeded despite notice or warning, or where he [or she] failed to take proper precautions to ascertain the boundary * * * the courts * * * have refused to balance the equities, and have issued the mandatory injunction without regard to the relative convenience or hardship involved." *Ariola v. Nigro,* 16 Ill.2d 46, 156 N.E.2d 536, 540 (1959).

*See also Whitlock v. Hilander Foods, Inc.,* 308 Ill.App.3d 456, 241 Ill.Dec. 847, 720 N.E.2d 302, 307 (1999) (declaring that where "the encroachment is deliberate the court may issue the injunction without considering the relative hardships"); *Le Clerq v. Zaia,* 28 Ill.App.3d 738, 328 N.E.2d 910, 913 (1975) ("balancing of equity * * * is not normally considered where encroachment by a defendant is intentional"). The rationale behind this result is that "[o]ne who knows of a claim to land which he [or she] proposes to use as his [or her] own, proceeds at his [or her] peril if he [or she] goes forward in the face of protest from the claimant and places structures upon the land." *Ariola,* 156 N.E.2d at 540 (quoting *Tyler v. City of Haverhill,* 272 Mass. 313, 172 N.E. 342, 343 (1930)). "[T]he duty of the courts is to protect rights, and innocent complainants cannot be required to suffer the loss of their rights because of the expense to the wrongdoer." *Id.*

■ The undisputed testimony reveals that at the time defendants were contemplating developing the site, the developer, Nicholas E. Cambio, and Renaissance's president, William N. Janikies, met with defendants to discuss their development plans. They discussed, among other things, the construction of the retaining

wall. They could not reach an agreement over this issue, so Mr. Janikies specifically instructed defendants not to build it. Despite this instruction, defendants, nevertheless, knowingly and deliberately graded the land in such a way as to encroach on Renaissance's property within the cross-easement area, thus making it necessary to erect a retaining wall.

Considering that defendants knowingly and deliberately encroached on Renaissance's property, and did so even after the encroachment was prohibited by Renaissance, a balancing of the equities was not appropriate because the hardship to defendants was self-inflicted. Even if a balancing of the equities had been appropriate, the encroachment was more than *de minimus* where Renaissance's access to the back portion of its lot was restricted, the amount of land involved was approximately 250 square feet, and the result of the encroachment was the economic enrichment of defendants at the expense of Renaissance. Consequently, a permanent injunction should have been issued.

For the foregoing reasons, the appeal by Renaissance is sustained, the judgment appealed from is reversed and the cause is remanded to the Superior Court for entry of an injunction as requested.