**Supreme Court**

No. 2013-68-Appeal.
(WC 11-154)

Rose Nulman Park Foundation, by its        :
Trustees, Carol B. Nulman and Joel S.
            Nulman

            v.                              :

Four Twenty Corp., et al.                   :

NOTICE:    This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Rose Nulman Park Foundation, by its : 
Trustees, Carol B. Nulman and Joel S. 
Nulman

v. :

Four Twenty Corp., et al. :

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Justice Indeglia, for the Court.** On land owned by the plaintiff, Rose Nulman Park

Foundation (Foundation) and described as "a diamond on the necklace that is Rhode Island's

beautiful coastline,"[1] the defendants, Robert C. Lamoureux and Four Twenty Corporation

(collectively, defendants), erroneously constructed a $1.8 million home. This case is before us

on the defendants' appeal from a judgment of the Superior Court granting a mandatory

injunction ordering them to remove the home. For the reasons set forth in this opinion, we

affirm the judgment of the Superior Court.

**I**

**Facts and Travel**

The underlying facts in this matter are essentially undisputed. The plaintiff, Rose

Nulman Park Foundation, which was established in 2006, owns real property located at 1460

---

[1] This Court is indebted to amicus curiae the Surfrider Foundation for its eloquent and helpful brief.

Ocean Road in Narragansett, Rhode Island (the Nulman property).[2]  The Foundation was established for the express purpose of "preserv[ing] and maintain[ing] * * * [the Nulman property] for use as a park which is open to the public free of charge for recreation and contemplation, under the name 'Rose Nulman Park' * * *" (the Park).  A 2008 settlement agreement among some members of the Nulman family, including Carol B. Nulman and Joel S. Nulman, the current Trustees of the Foundation, further stated:

> "In the event that, at any time after the date of this Agreement, the Trustees permit the Park to be used in any manner other than [as a park open to the public] then those of the Nulmans who are then serving as trustees of the Rose Nulman Park Foundation * * *, jointly and severally, agree to pay the sum of One Million Five Hundred Thousand Dollars ($1,500,000.00) to New York Presbyterian Hospital * * * provided, however, that no such payment will be required if a court determines that the Park can be put to uses other than the Designated Use under the doctrine of cy pres or otherwise * * *."

Sometime in 1984, defendant Robert C. Lamoureux, who is the president and sole owner of defendant Four Twenty Corporation (Four Twenty), acquired a parcel of land on Ocean Road.  That parcel was subdivided into two lots, one of which was designated as 1444 Ocean Road[3] (the Four Twenty property) and abuts the Nulman property.  The defendants, who are developers of real estate, hired Carrigan Engineering to assist them with the process of obtaining all the necessary permits to construct a single-family residence on the Four Twenty property.  Carrigan Engineering, accordingly, produced a site development plan showing the location of the proposed structure in relation to what was believed to be the boundary line between the Four Twenty property and the Nulman property.  The site development plan was stamped by Craig

---

[2] This property is designated as Assessor's Map M, Lot No. 162 in the Land Evidence Records of the town of Narragansett, and has been owned by the Nulman family since sometime in the early 1990s.

[3] This lot is designated as Assessor's Map M, Lot No. 161 in the Land Evidence Records of the town of Narragansett.

Richard Carrigan as a registered professional engineer and noted that the "[d]epicted boundary survey conforms with a Class III standard as adopted by the Rhode Island Registration of Professional Land Surveyors."[4] In November 2009, after defendants obtained a building permit approving the construction of the structure on the Four Twenty Property, construction began and was substantially completed by January 2011.

At that time, Four Twenty entered into a purchase and sale agreement to sell the Four Twenty property to a prospective buyer for a price of approximately $1.9 million. In conjunction with the proposed purchase and sale, the prospective buyer had a survey conducted which revealed that the structure was, in fact, entirely located on the Nulman property. Consequently, the buyer terminated the agreement to purchase the structure.

Lamoureux immediately contacted Ms. Nulman to inform her of the problem and attempted to determine whether an accommodation or agreement could be reached. Ms. Nulman informed him that the land was not for sale and that the structure would have to be taken down or moved.

The Foundation instituted the instant action in the Washington County Superior Court on March 11, 2011, asserting that the structure constituted a continuing trespass on its property and requesting a mandatory injunction ordering defendants to remove it and otherwise return the Nulman property to its original condition. A bench trial was conducted before a Superior Court justice on June 21, 2012. Carol Nulman testified at trial that the $1.5 million penalty provision

---

[4] According to the Rhode Island Society of Professional Land Surveyors, a Class III survey is defined as a "data accumulation survey," which "measure[s] and show[s] the relative positions or locations of physical features to a stated graphical scale * * *." This definition includes the caveat that "[t]o the extent that property lines are reflected on such plans, they are to be regarded as pictorial only, unless such boundaries are also certified to a Class I, Class II, or Class V standard." We thank the amicus for this helpful information. At trial, Lamoureux testified that he was unfamiliar with what a Class III survey was.

in the settlement agreement was intended to make clear that the Nulman property was never to be sold or built on. She further testified that the Nulmans pay costs associated with the ownership and maintenance of the Park, including liability insurance, lawn care maintenance, and property taxes. She stated that the only structure on the property is a gazebo which serves as a memorial to Rose Nulman and a friend of the Nulman family and is used for various functions that take place at the Park. Lamoureux testified that the total cost for the construction and maintenance of the structure, including a construction loan that he had obtained, amounted to approximately $619,000. Lamoureux stated that the house encroached upon the Nulman property by approximately 13,000 square feet, which is 6.6 percent of the four and one-half acres that make up the entire Nulman property.[5] He further testified that the house could not, at that time, be moved onto another lot because he would first need to obtain the necessary building permits in order to do so and that, assuming he obtained the requisite permits, the cost of moving the house would be between $300,000 and $400,000.[6]

The trial justice issued a written decision on September 11, 2012. After acknowledging that it was an "unfortunate situation" and noting that defendants had understandably relied on the plan they had commissioned from Carrigan Engineering, he found that this reliance did not shift responsibility for the trespass from defendants. He went on to conclude that a 13,000 square foot intrusion, amounting to approximately 6 percent of the Nulman property, could not be classified as a de minimis encroachment. He noted that a balancing of the equities was not required in considering injunctive relief in this situation, but nonetheless considered defendants' argument

---

[5] Ms. Nulman explained that the portion of the land which was encroached upon by the house was overgrown with shrubs and had not, therefore, been generally used by the public for recreational purposes.

[6] At oral argument, defendants stated that they have begun the process of obtaining the necessary permits but that the process has been stalled, due to an appeal, that is currently pending in Superior Court.

- 4 -

that the cost of the removal would be greatly disproportionate to the benefit accruing to the plaintiff from the removal. He cited this Court's opinion in Santilli v. Morelli, 102 R.I. 333, 338, 230 A.2d 860, 863 (1967), for the proposition that the disproportionality of the cost of removal to the benefit to the plaintiff is not a bar to the granting of injunctive relief. The trial justice concluded that forcing a sale of even a part of the Nulman property would be inconsistent with the fundamental right of property ownership. Accordingly, the trial justice granted plaintiff's request for a mandatory injunction and ordered defendants to remove the structure and other improvements from the land belonging to the Foundation. Final judgment for plaintiff entered on October 23, 2012, mandating that defendants remove the encroachments from the Nulman property within 180 days.

The defendants filed a notice of appeal to this Court on November 2, 2012. By a consent order entered on December 4, 2012, the enforcement of the judgment of the Superior Court was stayed pending this appeal.

## II

### Standard of Review

"A judgment in a nonjury case will be reversed on appeal when it can be shown that the trial justice misapplied the law, misconceived or overlooked material evidence[,] or made factual findings that were clearly wrong." Lamarque v. Centreville Savings Bank, 22 A.3d 1136, 1139-40 (R.I. 2011) (quoting Cathay Cathay, Inc. v. Vindalu, LLC, 962 A.2d 740, 745 (R.I. 2009)). Similarly, "a decision to grant or to deny injunctive relief is discretionary in nature, and such a decision will not be disturbed on appeal absent a showing of abuse of discretion or error of law." North End Realty, LLC v. Mattos, 25 A.3d 527, 530 (R.I. 2011). "Questions of law, however, are reviewed de novo." Cullen v. Tarini, 15 A.3d 968, 977 (R.I. 2011).

**Discussion**

On appeal, defendants argue that the trial justice misconstrued the law regarding injunctive relief as the appropriate remedy for a continuing trespass by incorrectly stating that the only exceptions to the general rule were acquiescence, laches, or when the trespass is <u>de minimis</u>. The defendants further contend that the trial justice abused his discretion in granting the mandatory injunction because he failed to properly balance the equities.

It is a bedrock principle of our property jurisprudence that land is not fungible; and, accordingly, equitable remedies are normally used when it comes to injuries and intrusions to it. <u>See</u>, <u>e.g.</u>, <u>Griffin v. Zapata</u>, 570 A.2d 659, 661-62 (R.I. 1990) (stating that the equitable remedy of specific performance is appropriate where adequate compensation cannot be achieved through money damages, as for example, where land is involved); <u>Santilli</u>, 102 R.I. at 338, 230 A.2d at 863 (noting that it is only in "exceptional cases where the substantial rights of the landowner may be properly safeguarded without recourse to an injunction").

Likewise, we have generally held that the appropriate remedy for a continuing trespass is injunctive relief. <u>See</u> <u>Raposa v. Guay</u>, 84 R.I. 436, 444, 125 A.2d 113, 117 (1956) (acknowledging the general rule that an owner of land is entitled to demand the removal of an encroaching building); <u>Bentley v. Root</u>, 19 R.I. 205, 207, 32 A. 918, 919 (1895) ("There can be no doubt of the right [of an owner of a gangway] to object to an obstruction of a way, temporary or permanent, by one who has a title or easement."); <u>see also</u> 42 Am.Jur.2d <u>Injunctions</u> § 103 at 706 (2010) (stating that "[i]njunctive relief is a proper remedy where the act complained of constitutes a continuing trespass"). In <u>Santilli</u>, this Court explicitly adopted the general rule that "[a] continuing trespass wrongfully interferes with the legal rights of the owner, and in the usual

case those rights cannot be adequately protected except by an injunction which will eliminate the trespass." Santilli, 102 R.I. at 338, 230 A.2d at 863 (quoting Ferrone v. Rossi, 42 N.E.2d 564, 566 (Mass. 1942)). Since then, this Court has adhered to that principle. See Renaissance Development Corp. v. Universal Properties Group, Inc., 821 A.2d 233, 238 (R.I. 2003) (citing Santilli for "the general rule that when there is a continuing trespass on an owner's land, he or she is entitled to a mandatory injunction").

We have also acknowledged, however, that this general rule is not absolute and that, accordingly, in exceptional cases, a court may, in its discretion, decline to follow it where the injunctive relief would operate oppressively and inequitably. See Adams v. Toro, 508 A.2d 399, 401 n.1 (R.I. 1986) ("The [general] rule will not apply in those exceptional cases where the rights of the landowner can be adequately protected without resort to injunctive relief that would operate oppressively and inequitably against the encroaching party."); Santilli, 102 R.I. at 338, 230 A.2d at 863 ("[T]he existence of such circumstances may in exceptional cases move the court to withhold the coercive relief contemplated by the general rule."). We have held that these exceptional circumstances include, but are not limited to, acquiescence, laches, or a de minimis trespass. See Bochterle v. Saunders, 36 R.I. 39, 45-46, 88 A. 803, 806 (1913) (stating that a finding of laches would operate to bar the plaintiff from the requested relief and also noting that the encroachment of only eighteen inches was "slight" and would not "impede or embarrass the complainant in its use and enjoyment"); Bentley, 19 R.I. at 208, 32 A. at 919 (noting that a party would not be entitled to injunctive relief to remove an obstruction of an easement if a finding of acquiescence was made and where the encroachment "existed for more than twenty years without objection").

In addition to these discrete situations, we have also held that courts may withhold injunctive relief after balancing the equities or, put another way, considering the relative hardships to the parties. See, e.g., Bentley, 19 R.I. at 208, 32 A. at 919 ("[Where] the obstruction * * * does not interfere with his use of the way, and relief in equity would be of no real benefit to him, but a cause of great trouble to the respondents, * * * we may properly leave him to his remedy at law."). More recently, in a case dealing with injunctive relief to enforce restrictive covenants, this Court clarified that a trial court is not required to balance the equities before granting injunctive relief, noting that "[t]he doctrine of balancing the equities is applied in cases when the enforcement of a restriction will disproportionately harm the defendant with little benefit to the plaintiff." Cullen, 15 A.3d at 982. However, this Court has never stated—nor do we now hold—that a trial court is required to balance the equities before granting injunctive relief in a continuing trespass case. See, e.g., Santilli, 102 R.I. at 338, 230 A.2d at 863 (stating that, in exceptional cases, a court may deny injunctive relief). Moreover, as this Court has emphasized, "[t]he issuance and measure of injunctive relief rest in the sound discretion of the trial justice." Cullen, 15 A.3d at 981.

Our review of the record and the trial justice's decision compels us to conclude that the trial justice thoroughly and appropriately contended with the facts of the case and all the arguments presented by the parties. We discern no error in the trial justice's statement of the applicable law.

We note that defendants mischaracterize the trial justice's decision in stating that he erroneously concluded that the only exceptions to the general rule are acquiescence, laches, or when the trespass is de minimis. While he explicitly discussed those three exceptions and found they did not exist, he correctly acknowledged that there may be other exceptional circumstances

that would justify a departure from the general rule. Further, the trial justice went beyond the three listed exceptions to address defendants' balancing arguments, although he noted that he "was not obligated to balance the equities when considering injunctive relief." We are of the opinion that the trial justice correctly stated and applied our precedents in his decision.

The defendants take issue with the trial justice's balancing of the equities, specifically with his finding that requiring plaintiff to give up 6 percent of the total Nulman property was "six percent more than what a landowner in fee simple should be forced to transfer." They contend that, in so doing, he signaled a categorical refusal to actually balance the equities. We disagree with defendants' argument. Not only did the trial justice acknowledge the great value placed on property rights, but he also meaningfully grappled with the relative hardships to the parties. He considered the "substantial financial burden" which an injunction would place on defendants, but concluded that the harm to the Nulmans that would result from a deliberate thwarting of their express intent in creating the Foundation outweighed the burden to defendants.

This Court has repeatedly made clear that a departure from the general rule that a continuing trespass should be remedied by injunctive relief is justified only in exceptional circumstances. See Cullen, 15 A.3d at 982 (emphasizing that balancing of the equities is appropriate only "in extraordinary cases"); Adams, 508 A.2d at 401 (holding that it was an abuse of discretion for the trial court to deny mandatory injunction to remove encroachment from the plaintiff's property where there was nothing in the record to indicate that any circumstances would make injunctive relief inequitable). We are satisfied that the case at bar does not involve such exceptional circumstances "which would render such coercive relief inequitable or oppressive." Adams, 508 A.2d at 401. Indeed, we are of the opinion that a fair balancing of the equities supports the trial justice's decision to grant injunctive relief.

The defendants emphasize that this case does not involve knowing or deliberate conduct, that this Court has concluded justifies the imposition of injunctive relief without balancing the equities. See Cullen, 15 A.3d at 983 (concluding that a balancing of the equities was not appropriate where "the defendants knowingly and admittedly violated the valid restrictive covenants that applied to their property"); Renaissance Development Corp., 821 A.2d at 239 ("Considering that [the] defendants knowingly and deliberately encroached on Renaissance's property, * * * a balancing of the equities was not appropriate because the hardship to [the] defendants was self-inflicted."). They further insist that Lamoureux's reliance on hired experts was "utterly reasonable," and that, accordingly, he had the "clean hands" which would make balancing appropriate. The trial justice, in fact, agreed that Lamoureux's reliance on Carrigan's site development plan was justified, but stated that it did not suffice to exempt defendants from liability. We agree with the trial justice's conclusion.[7]

The defendants urge us to follow the example of courts in other jurisdictions, which have relied on the balancing of the equities or the relative hardships to the parties, in denying injunctive relief in cases where the encroachment was innocently done and the hardship to the defendants would greatly outweigh any harm to the plaintiffs. See, e.g., Proctor v. Huntington, 238 P.3d 1117, 1121, 1123 (Wash. 2010) (denying injunctive relief in a case where the encroachment by the defendants of their house, garage, and well onto the plaintiff's land was the result of a "good-faith surveying mistake," and where any benefit to the plaintiff from the removal would be minimal); Szymczak v. LaFerrara, 655 A.2d 76, 79-80 (N.J. Super. Ct. App.

---

[7] We do, however, find it curious that Lamoureux, as someone who, according to his own testimony, has been developing real estate for approximately forty years, was entirely unaware of the different classes of surveys and, moreover, in spite of the money he planned to expend based on Carrigan's plan, failed to make any inquiry as to the significance of the caveat on Carrigan's site development plan that it was a Class III survey.

Div. 1995) (stating that an injunction was not warranted when the injunction required the destruction of the defendant's home where the encroachment was due to an innocent mistake and where the encroachment was on an undeveloped lot belonging to the plaintiff). We find these cases to be inapposite to the case at bar. The defendants averred at oral argument that the encroachment here has not caused plaintiff any substantial injury because the portion of the Nulman property on which the house was built was overgrown with brush. Moreover, defendants place great weight on the various hardships that moving the house to the actual lot owned by them would cause—from the time and money defendants would need to expend to obtain the necessary permits to build on their lot, as well as the expense of actually moving the house.

We deem defendants' arguments to be without merit and conclude that the harm to plaintiff more than outweighs the hardships to defendants in having to remove the house. We begin by emphasizing, as did the trial justice, that an encroachment of some 13,000 square feet is not a minimal one. The encroachment here is not small enough that a balancing of the equities makes the hardship to defendants outweigh the harm to plaintiff. Compare Bentley, 19 R.I. at 207-08, 32 A. at 919 (holding that where a building encroached onto a gangway by three feet eight inches but did not otherwise interfere with the plaintiff's use of the gangway in any way, an injunction was not warranted), with Renaissance Development Corp., 821 A.2d at 239 (approving a permanent injunction where the encroachment was approximately 250 square feet). Moreover, we note that Carol and Joel Nulman, as the Trustees of the Foundation, would potentially be personally liable for paying the $1.5 million penalty in the event that the house is permitted to remain on the Nulman property. While the defendants insist that the trial justice erred in considering the potential hardship that would be inflicted on the individual trustees, as

non-parties to the suit, it is accepted that in balancing the equities, a court may consider the interests of third parties and of the public in general. See Restatement (Second) Torts § 942 (1979).

Finally, in addition to any injury suffered by plaintiff or by the Nulmans personally, we must consider the interests of the public. Ms. Nulman testified that the intent in starting the Foundation was to ensure that the land was never developed as "[i]t's a historic spot surrounded by the ocean and * * * we should maintain this for the public use. * * * The sentimental value to the public is enormous * * *." This clear commitment of the land's use as community space satisfies us that any attempt to build on even a portion of the property would constitute an irreparable injury, not only to plaintiff but to the public. Cf. Foster Glocester Regional School Building Committee v. Sette, 996 A.2d 1120, 1124 (R.I. 2010) (stating that, in deciding whether to grant a preliminary injunction, a court should consider "the balance of the equities, including * * * the public interest") (quoting Iggy's Doughboys, Inc. v. Giroux, 729 A.2d 701, 705 (R.I. 1999)). See also EBay, Inc. v. MercExchange, LLC, 547 U.S. 388, 391 (2006) ("A plaintiff [seeking a permanent injunction] must demonstrate * * * that the public interest would not be disserved by a permanent injunction.").

In conclusion, we are not unsympathetic to the defendants' plight and agree that this is, as the trial justice acknowledged, an "unfortunate situation." We are, however, convinced that it would be an unjust result to order the transfer of title to a portion of the Nulman property to the defendants or award only money damages. While the defendants may well have clean hands, the plaintiff is certainly an innocent party as well. Indeed, we note that the plaintiff has been put to the inconvenience of protecting its right to its property in court as a consequence of wanting to ensure that the public would always be able to enjoy the property in its natural state. It is said

that "no good deed goes unpunished." Whatever the truth of the saying might be, this Court declines to punish the innocent plaintiff by forcing it to lose any portion of its property. To do so would be to effect a judicial taking of property for private benefit. "[T]he duty of the courts is to protect rights, and innocent complainants cannot be required to suffer the loss of their rights because of the expense to the wrongdoer." Renaissance Development Corp., 821 A.2d at 238 (quoting Ariola v. Nigro, 156 N.E.2d 536, 540 (Ill. 1959)). As this Court made clear in Santilli, the fact that an encroaching building "was erected in good faith * * * is not a bar to the granting of coercive relief." Santilli, 102 R.I. at 338, 230 A.2d at 863. We find no error on the part of the trial court in issuing the mandatory injunction. Indeed, we conclude that injunctive relief is the appropriate remedy in this case. Accordingly, we affirm the trial justice's granting of the plaintiff's request for such relief.

## IV

## Conclusion

For the foregoing reasons, the judgment of the Superior Court is affirmed. The record in this case is remanded to that tribunal with directions that the defendants be given a reasonable period of time, as determined by the trial justice, to comply with the judgment of the Superior Court.



# RHODE ISLAND SUPREME COURT CLERK'S OFFICE

## *Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:**    Rose Nulman Park Foundation, by its Trustees, Carol B. Nulman and Joel S. Nulman v. Four Twenty Corp., et al.

**CASE NO:**    No. 2013-68-Appeal.
(WC 11-154)

**COURT:**    Supreme Court

**DATE OPINION FILED:**    June 13, 2014

**JUSTICES:**    Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**    Association Justice Gilbert V. Indeglia

**SOURCE OF APPEAL:**    Washington County Superior Court

**JUDGE FROM LOWER COURT**:

Associate Justice Brian P. Stern

**ATTORNEYS ON APPEAL:**

For Plaintiff:  Mark W. Freel, Esq.

For Defendants:  James E. Kelleher, Esq.