*Harold W. Thatcher, Frank H. Swan, Edwards & Angell,* for respondent.

---

MINNIE O. BUCHANAN *et. al., v.* BARTON W. JENCKS.

JANUARY 12, 1916.

PRESENT: Johnson, C. J., Parkhurst, Sweetland, Vincent, and Baker, JJ.

*(1)   Cotenancy.*

A cotenant in the enjoyment of his rights as such can authorize another to do whatever he might lawfully do himself.

*(2) Cotenancy. Cutting Timber.*

A tenant in common may sell the timber in a condition fit for cutting on the land held in common and may authorize the purchaser to cut and remove the same and no right of action accrues in favor of the other cotenants against the purchaser.

What the rights of the other cotenants may be as to an accounting is not decided.

*(3) Cotenancy. Cutting Timber. Ouster.*

The act of a cotenant in the sale and cutting of all the matured timber and wood on the land held in common, does not amount to an ouster of the other cotenants or to the destruction of the corpus of the estate.

*(4) Cotenancy. Waste.*

The cutting and removal of the matured product of the land by one cotenant is not in controvention of Gen. Laws, 1909, cap. 333, § 2, which relates only to waste, which such acts cannot be considered.

*(5) Pleading. Trespass Quare Clausum.*

The licensee of a cotenant cannot be guilty of a trespass *quare clausum fregit*, in entering upon the premises held in common.

*(6) Cutting Growing Trees.*

Gen. Laws, 1909, cap. 335, of recovering damages for cutting trees, timber wood and underwood, penalizes a defendant who without leave commits a trespass on the land of another, but does not apply to a cotenant or his licensee having a right to avail himself of the revenue of the land held in common.

*(7) Pleading. Surplusage.*

Where a declaration in trespass under a special statute seeks to impose the penalty under such statute, the setting up of the statute being indispensable, that portion of the count which refers to it cannot be disregarded as surplusage and the remainder stand as a count for trespass at common law.

TRESPASS. Heard on exceptions of defendant and sustained.

VINCENT, J. The plaintiffs, Minnie O. Buchanan, Milon M. Walling, George H. Day and Bessie G. Rich, together with one Enoch Thayer, are tenants in common of a certain wood lot situated in the town of Burrillville, containing upwards of five acres. This lot does not adjoin, nor is it used in connection with any other property of the above named cotenants or either of them. The several interests of the parties in the lot are as follows: Minnie O. Buchanan,

one-sixth; Milon M. Walling, one-third; George H. Day, one-twelfth; Bessie G. Rich, one-twelfth; and Enoch Thayer, one-third.

Some time in the year 1911, Enoch Thayer sold to one H. O. Aldrich the standing timber and wood upon said lot and authorized him to cut and remove the same. Thereafterwards the said Aldrich transferred to the defendant, Barton W. Jencks, all the right to cut and remove said timber and wood which he had acquired from Thayer. It is not disputed that these sales and transfers were in each case made for a valuable consideration.

Under these conditions, and acting under the authority thus conferred upon him, the defendant, Jencks, proceeded to and did cut and remove the timber and wood from the whole of said lot, whereupon the plaintiffs brought the present suit.

The plaintiffs' declaration is in two counts. The first count alleges that the defendant with force and arms, without leave of the owners thereof, did cut, destroy, and carry away all the trees, wood, and underwood of the said plaintiffs as tenants in common, etc., and concludes with the averment that the defendant by reason thereof became liable, under the statute, for two-thirds of twice the value of the trees so cut, destroyed, and carried away, and two-thirds of thrice the value of the wood and underwood so cut, destroyed, and carried away.

The second count alleges that the defendant with force and arms, and without the leave of the owners thereof, broke and entered the close of the plaintiffs and then and there cut, destroyed, and carried away all the trees, wood, and underwood situated upon said lot belonging to the plaintiffs and the said Thayer, whereby the said defendant, under and by virtue of the statute, became liable to pay to the plaintiffs two-thirds of twice the value of the trees so cut, destroyed, and carried away, and two-thirds of thrice the value of the wood and underwood so cut, destroyed, and carried away.

It seems to us desirable to determine, in the first instance, whether or not Barton W. Jencks, through the several transfers before mentioned, acquired a right to enter upon this lot and cut wood and timber. It will not be disputed that one cotenant by an entry upon the common property does not *ipso facto* become a trespasser. He may become a trespasser, as some of the authorities hold, if his entry is accompanied by acts which amount to an ouster of his cotenants or is followed by destruction of the common property. Enoch Thayer, as a tenant in common of this wood lot, had the right to enter upon the same without becoming a trespasser and he had the right to cut timber and wood there, provided his entry did not amount as before suggested to an ouster of his cotenants or involve the destruction of common property. Whether a cotenant may be required to account for his use of the common property or what the rights of the other cotenants may be as to an accounting are questions which we are not called upon to consider in the present proceeding. We see no reason why a cotenant in the enjoyment of his rights as such cannot authorize another to do whatever he might lawfully do himself. A (1) contrary view, if followed to its logical conclusion, would restrict à cotenant's enjoyment of the common property to the sphere of his own personal activities and would deprive him of the aid of others whom he might desire or need to employ. A cotenant has the right to divest himself of his entire interest in the common estate and thus bring into association with his former cotenants one who had theretofore been a stranger to the title, and this he can do independently and without the consent of the other interests. This being so, it would seem unreasonable to say that a cotenant could not authorize another to go upon the common land and do anything that he might do himself. We think therefore that in this case we must apply the same principles to the consideration of the acts of the defendant, Jencks, which we might have applied to Thayer, the cotenant, had he, in person, committed the acts of which the plaintiffs now complain.

In *Gillum et al.* v. *St. Louis, Arkansas & Texas Ry. Co.*, 5 Tex. Civ. App. 338, it was held that one tenant in common has the right to sell marketable timber growing on the common estate, and pass a clear title thereto to the purchaser and no right of action accrues to the other cotenants against the vendee who carries off and uses the same. The court said in its opinion that, "All tenants in common have a right to possession of the property, and a right to use and enjoy it. Each has a right to cultivate it, and reap the proceeds of such venture. Each has a right to cut the grass thereon and market it; and each has the right to sell the marketable timber growing thereon."

(2)    In *Baker* v. *Wheeler & Martin*, 8 Wend. 505, it was held that a tenant in common may cut trees, proper to be cut on the land held in tenantry in common, and the remedy of the cotenant is an action, against the cotenant cutting the timber, for his share of the value; and in that case the court also held that if one tenant in common may cut himself, he may give license to another. This doctrine is also laid down in *McCord* v. *Oakland Quicksilver Mining Company*, 64 Cal. 134, and in *Alford* v. *Bradeen*, 1 Nev. 228. In the latter case the court said: "There can be no doubt Barnes, as a tenant in common, might cut timber himself on the ranch, or he might authorize another to do what he himself could do. Whatever the rights or remedies of the other tenants for recovering their share of the value of the timber cut and sold, they could not take the timber from one to whom Barnes had sold it."

In *Causee* v. *Anders*, 20 N. C. 246, it was held that a tenant in common has no right to inflict a battery upon one who enters upon the land under the authority of a cotenant; and in this respect there is no distinction between the cotenant and one entering with him and under his authority.

*Martyn* v. *Knowllys*, 8 T. R. 145, was an action on the case, in the nature of waste, brought by one cotenant against another for cutting down trees of a proper age and growth for being cut. In the lower court a verdict was directed

for the plaintiff, but upon motion in the court of King's Bench to enter a verdict for the defendant, Lord Kenyon, Ch. J., said: "This verdict has neither principle nor authority for its support. . . . If one tenant in common misuse that which he has in common with another, he is answerable to the other in an action as for misfeasance. But here it does not appear that the defendant committed anything like waste: no injury was done to the inheritance; no timber was improperly felled; the defendant only cut those trees that were fit to be cut. And if he were liable in such an action as this, it would have the effect of enabling one tenant in common to prevent the other's taking the fair profits of the estate. In another form of action the plaintiff will be entitled to recover a moiety of the value of the trees that were cut."

It appears from the testimony that the larger part of the timber and wood upon the lot in question had reached maturity and was in a condition fit for cutting. The plaintiffs claimed and offered some testimony for the purpose of showing that the defendant, in addition to the wood and timber which had reached maturity, had also cut and removed other wood and undergrowth which had not matured and contended that as to the latter they were entitled to recover under the statute their proportionate damages amounting to two-thirds of thrice the value of such wood and underwood so cut and removed. The plaintiffs however offered no testimony from which the quantity or the value of the undeveloped material alleged to have been cut and removed could be ascertained or determined and the consideration of that matter is therefore necessarily eliminated.

(3)     We come now to the discussion of the rights of the several parties or cotenants as affected by the acts of the defendant in cutting and removing all of the timber and wood which had reached maturity at the time of the cutting.

If there was anything in the conduct of the defendant, acting within the authority of Thayer, the cotenant, which amounted to the ousting of the cotenant plaintiffs, or if the

cutting and removal of the ripe product of the lot was a destruction of some portion of the corpus of the estate, there is ample authority for holding that the defendant, although standing in the place of a cotenant, would be liable in trespass in the same manner and to the same extent as Thayer himself would have been under like circumstances.

We do not find anything in the evidence showing an ouster of the plaintiffs. So far as appears they were in no way prevented by the defendant or by Thayer from entering upon the premises and cutting and removing timber and wood had they seen fit to do so, and we do not think that the sale, cutting, and removal of matured timber and wood amounts to a destruction of the property which the law contemplates. If Thayer, or the defendant claiming to act under him, had for example wantonly, maliciously or carelessly caused the burning over of the wood lot in question, either consuming the wood and timber or rendering it unmarketable and unfit for use, it would be clear that there had been a destruction, at least in part, of the corpus of the estate.

(4)    In our view of the case the cutting and removal of the matured product of the land, by one cotenant, would not be in contravention of Section 2, Chapter 333 of the Gen. Laws of 1909, as that section only provides for the recovery of damages from a cotenant who has committed waste on the common estate. The gathering of the wood and timber fit for cutting cannot be considered as waste and for that reason the section is not applicable to the case at bar, as well as for the further reason that it does not authorize or apparently contemplate an action of trespass.

In the present case the wood and timber has been sold, cut, and removed by the defendant acting under the authority of the cotenant, Thayer, who may or may not be liable, under the statute, to account to his cotenants for their due proportion of the proceeds, but as before observed, we are not at present concerned with that question. This lot was simply a wood lot whereon trees were allowed to grow

until they reached maturity and were fit to cut for timber or fire wood. When the crop had matured or ripened it could be cut, removed, and sold with the same degree of propriety and with as much reason as a crop of hay or any other product of the land. To be sure a crop of hay grows and matures more quickly than trees and there are yet other crops that develop and ripen more speedily than hay. Because one thing may mature quickly and another require a long period to fully develop, it does not follow that a different principle should be applied in determining the question in the one case than in the other. The crop, whether it be hay in the meadow or trees in the wood lot, is of the income of the property and to harvest it or gather it at its maturity cannot reasonably be called a destruction of the corpus of the estate.

In 2 Waterman on Trespass, 391, it is stated that, "There is a manifest distinction between the cases in which one tenant in common appropriates the proceeds, such as rents, profits or income of the estate, and where he practically destroys the estate itself, or some portion of it. In the latter, trespass may be maintained; in the former, it cannot." In support of such statement the author cites, among others, the case of *Symonds* v. *Harris*, 51 Me. 14, which was a case in which one tenant in common took and carried away the machinery of a mill, which formed a part of the common property and which was essential to its operation, and, incorporated it into another mill of which he was sole owner, and it was held that the action of the cotenant amounted to a destruction of the common property. So in another case which the author cites. *Blanchard* v. *Baker*, 8 Me. 253, when a tenant in common took and carried away all the machinery of a mill his act was held to be tantamount to the destruction of the common property. See, also, *Voyce* v. *Voyce*, Gow's Reports, 201. Other authorities might be cited to the effect that the cutting of trees, of a proper age and growth, by one tenant in common does not furnish any basis for an action of trespass by his cotenant, but further

citations on that point are unnecessary. Assuming, as many authorities hold, that an action of trespass will lie by one tenant in common against his cotenant only where there has been an ouster or the destruction of some portion of the common property, and that the cutting of matured wood and timber is a privilege of the cotenant, it naturally follows that such wood and timber is not of the corpus of the estate, but is of the revenue and income.

(5)     The plaintiffs' declaration as before stated is in two counts. The second count alleges a trespass *quare clausum fregit.* We do not think that the plaintiffs' suit is maintainable upon such a count. The gist of the count is that the defendant broke and entered the close of the plaintiffs. But a cotenant cannot be said to be guilty of a trespass *quare clausum fregit* for the reason that he has, in common with his cotenants, a right to enter upon the premises, and such entry does not constitute a trespass. Neither could the defendant be guilty of trespass in entering the close because he entered upon the authority of Thayer, who was a cotenant with the plaintiffs.

In *Anders* v. *Meredith*, 20 N. C. 199, the court said: "The possession of one tenant in common is the possession of the other; each has a right to enter upon the land and enjoy it jointly with the other. If one tenant in common destroys houses, trees, or does any act amounting to waste or destruction in woods or other such property the tenant may have an action on the *case* against him. But he never can, in any event, have an action of trespass *quare clausum fregit* against his cotenant." See, also, 1 Coke's Inst., Section 323; *Wait* v. *Richardson*, 33 Vt. 190; *Booth* v. *Sherwood*, 12 Minn. 426; *Jones* v. *Chiles*, 8 Dana, 163; *Duncan* v. *Sylvester*, 13 Me. 417.

The first count alleges a trespass on the part of the defendant in taking and carrying away trees, wood, and underwood, and converting and disposing of the same to his own use, "whereby and by virtue of the statute in that behalf made and provided" the defendant became liable to

pay damages for the same to said plaintiffs in the proportion of two-thirds of twice the value of the trees so cut and carried away and two-thirds of thrice the value of the wood and underwood, etc. The statute upon which this count is based is Chapter 335 of the General Laws of 1909, which is as follows: "Section 1. Every person who shall cut, destroy, or carry away any tree, timber, wood, or underwood whatsoever, lying or growing on the land of any other person, without leave of the owner thereof, shall, for every such trespass, pay the party injured twice the value of any tree so cut, destroyed, or carried away; and for the wood or underwood, thrice the value thereof; to be recovered by action of trespass."

It will be observed that this statute penalizes a defendant who shall without leave commit a trespass on the land of another person. We do not think that this statute was intended to apply to a cotenant, or his licensee, who had a right to enter upon the land and to avail himself of its benefits and revenue, but was designed to protect the owners of land from the invasion of those who were strangers to the title.

The question may now arise as to whether the reference to the statute as in the first count of the plaintiffs' declaration may not be eliminated as surplusage and the remainder thereof stand as a good and sufficient count for a common law trespass. We do not think that it can be so held. The plaintiffs seek to impose upon the defendant a penalty created by a special statute and in their count they have so declared. They have in other words counted upon the statute and by their suit have undertaken to avail themselves of its special provisions. "Counting upon a statute, consists in making express reference to it—as, by the words, 'against the form of the statute' or 'by force of the statute in such case made and provided.'" Gould on Plead. 5th Ed. 46, Note 3. The reference to the statute is essential to the recovery which the plaintiffs are attempting to effect, for without it neither double or triple damages could be re-

covered.   This court held in *Bell* v. *Providence Gas Co.*, 36
R. I. 382, that in order to recover double damages under a
penal statute such statute must be declared upon.   There-
fore the setting up of the statute being indispensable that
portion of the plaintiffs' count which makes reference to it
cannot be eliminated or disregarded as surplusage.   Sur-
plusage in a declaration has been concisely defined as the
setting up of matter wholly foreign as, for example, where
a plaintiff brings suit upon one of the covenants of a deed
and sets out in his declaration other covenants wholly
irrelevant to the cause.   Stephen on Pleading, 3rd Am. Ed.
364.

In 1 Chitty on Pleading, 13th Am. Ed. 215, the rule is
laid down that "If   .   .   .   an offence be created by a
statute, and a penalty be inflicted, the mere statement of
the facts constituting the offence will be insufficient, for there
must be an express reference to the statute, as by the words
'contrary to the form of the statute, etc.,' in order that it
may appear that the plaintiff grounds his case upon and
intends to bring it within the statute," and in Gould on
Pleading, 5th Ed. 143, we find it stated that, "If in declaring
upon a public statute, the plaintiff *so* counts upon it, as
to confine himself to its terms as recited, as by the words
'*contra formam statuti predicti*,' but misrecites it, in a material
part; the declaration is ill in substance.   For though the
recital of a public statute is *unnecessary* :   Yet, it being thus
recited, and counted upon, the plaintiff must recover upon
it, if at all, *as* recited."   Our observations and the author-
ities cited upon this point are equally applicable to the
second count which, in respect to its reference to the statute,
is like the first count.

It seems to us that the plaintiffs through an erroneous
construction of the statute referred to have been led to base a
suit thereon which cannot, in any aspect of it, be maintained.

The parties, both plaintiffs and defendant, have in their
briefs discussed several other questions which we deem it
unnecessary to consider as our conclusions already reached

demolish the foundation upon which the case rests. We think that the defendant's exception to the refusal of the trial court to direct a verdict for the defendant must be sustained and that the case must be remitted to the Superior Court with direction to enter judgment for the defendant.

An opportunity will be given to the plaintiffs to appear before this court on January 26, 1916, at 10 o'clock A. M., if they shall see fit, and show cause, if any they have, why said case should not be remitted to the Superior Court with direction to enter judgment for the defendant.