February 22, 2024

Merlyn P. O'Keefe et al.          :

          v.                      :

                                  :

Myrth York et al.

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Merlyn P. O'Keefe et al.　　　　:

v.　　　　　:

Myrth York et al.　　　　:

Present:　Goldberg, Robinson, and Lynch Prata, JJ.

**O P I N I O N**

**Justice Lynch Prata, for the Court.**　This case came before the Supreme

Court pursuant to an order directing the parties to appear and show cause why the

issues raised in this appeal should not be summarily decided.　The plaintiffs

challenge the denial of their request for injunctive relief and their claims for adverse

possession relating to a private road located in South Kingstown, Rhode Island.

After considering the parties' written and oral submissions and reviewing the record,

we conclude that cause has not been shown and that this case may be decided without

further briefing or argument.　For the reasons set forth herein, we affirm the

judgment of the Superior Court.

**Facts and Travel**

This is a dispute among neighbors about the use and ownership of Larkin Pond

Road (the private road), a private road located off Ministerial Road in South

Kingstown, Rhode Island. The private road was platted in 1980 as part of a residential compound, known as White Horn Acres. The parties each own an undivided one-sixth interest in the private road and respectively own the six residential lots in the residential compound.

The plaintiffs, Merlyn P. O'Keefe and Mary Ellen O'Keefe (collectively plaintiffs or the O'Keefes), own the residential lot that is farthest from the main road. The O'Keefes' property fronts a cul-de-sac at the end of the private road, and they have resided there since 2000. Their property is next to an undeveloped lot owned by defendant Myrth York and down the street from a small farm (the James farm) owned by defendants Robert C. James and Lois A. James. Robert and Lois James's son,[1] defendant Joshua R. James, and his wife, Jennifer James, also own property on the private road. They reside on their property (the James dwelling) up the street from the O'Keefes, along with the remaining defendants—Donald G. Reardon and Patricia W. Reardon (collectively the Reardons) and John P. Champney and Denise E. Champney (collectively the Champneys)—who also own, and reside, on properties up the street from the O'Keefes.

White Horn Acres was originally a single lot before it was subdivided into six residential lots and one open-space lot in 1981. The residential lots were conveyed

---

[1] The members of the James family will be referenced individually using their first and last names or collectively as "the Jameses" for the sake of clarity. No disrespect is intended.

to the parties subject to certain easements and restrictions. In particular, each residential lot owner held a one-sixth interest in the private road and held a mutual perpetual easement in the private road "for all purposes for which streets, roads and highways are customarily used * * *." The subdivision plan depicted the "private road with common ownership" as being thirty feet wide to provide ingress and egress to each residential lot (the platted road).

The traveled portion of the private road was not, however, intended to span the full thirty-foot width of the platted road. Instead, the plan depicted the private road as being twenty feet wide with a five-foot buffer on each side. Accordingly, the actual, gravel road (the traveled way) does not span the thirty-foot width of the platted road, and the parties each hold a one-sixth interest not only in the traveled way, but also in the narrow strips of land on either side of the traveled way. The discrepancy between the platted road and the traveled way is at the center of this dispute.

Over the past twenty years, the O'Keefes have observed multiple obstructions in the platted road. Mr. O'Keefe testified that he observed the following obstructions: landscaped bushes in front of the Reardons' property; a white SUV in front of the James dwelling; a ride-on lawnmower in front of the James dwelling; a trailer in front of the James dwelling; fence posts to the side of the Champneys' property; miscellaneous farm equipment—including a ride-on tractor, towing bars,

a boat, and some bathtubs—located in front of the James farm; several cairns in front of the James farm;[2] a gate in front of the James farm; a chifforobe in the middle of the traveled way;[3] a fallen tree across the traveled way; and a bundle of branches across the traveled way.

Mr. O'Keefe testified that these obstructions "come and go." Most of the farm equipment had been removed from the platted road during the course of the lawsuit. Moreover, only the fallen tree, the branches, and the trailer impeded Mr. O'Keefe's ability to ingress and egress through the traveled way. The trailer, however, impeded road access only if two cars were passing each other. Additionally, the tree fell down after a severe storm and was cleared by Robert James and Mr. Reardon the same day.

The O'Keefes have also erected and maintained obstructions in the cul-de-sac portion of the platted road. Mr. O'Keefe testified that in 2000, when he and his wife moved in, they did not know that the cul-de-sac portion of the platted road was commonly owned. As such, the O'Keefes maintained the cul-de-sac's pea-stone covering, the shed that preexisted in the cul-de-sac area, and a basketball hoop in the cul-de-sac between 2001 and 2007. They also installed an electric fence around the

---

[2] A cairn is "a mound of stones erected as a memorial or marker." *Cairn*, The American Heritage Dictionary of the English Language 261 (5th ed. 2011).

[3] Mr. O'Keefe testified that the chifforobe was a piece of furniture that can be used as a closet.

border of the cul-de-sac to contain their German shepherds. The O'Keefe children parked their cars in the cul-de-sac between 2003 and 2007. Since at least 2002, the O'Keefes have maintained the landscaping within the cul-de-sac by planting a star magnolia, a pachysandra, and sod. Since 2010, they have paid a third party to mow the grass between the rhododendrons in the cul-de-sac and their home. To prevent defendants from using the cul-de-sac, Mr. O'Keefe testified that he and his wife kept their German shepherds in the area, who would bite people and who were generally "vicious to trespassers." They also posted invisible-fence signs near the shed in 2002 and no-trespassing signs shortly after moving in.

Despite these efforts, several defendants testified to using the cul-de-sac in the past ten years. Robert James testified that for the preceding twenty to twenty-five years, he had gone night running through the cul-de-sac to get to the adjacent turf field. He further testified that he had crossed through the cul-de-sac on his farm tractors, in his pickup truck, and on his motorcycle. Joshua James testified that, from 2008, he traveled down to the cul-de-sac once or twice a week on his ATV, his bicycle, his tractor, or in his or his wife's vehicle. Jennifer James testified that she sometimes ended her runs in the cul-de-sac. She did this on a semi-regular basis, about once a month, since 2008. The Champneys testified that they occasionally ran down to the cul-de-sac or drove down to the cul-de-sac since they moved in, in 2012.

None of the defendants were ever told by the O'Keefes that they were not allowed in the cul-de-sac. They were further undeterred by the German shepherds. While Robert James was aware that the dogs would bite intruders, he and the other defendants testified that they never had any issues with the dogs.

On October 16, 2018, plaintiffs filed an amended complaint against the Reardons, the Jameses, Ms. York, and the Champneys (collectively defendants). The plaintiffs proceeded on four counts: count one for a permanent injunction barring the Jameses' trespass and commanding their maintenance of the private road; count two for a permanent injunction barring the Reardons' trespass and commanding their maintenance of the private road; count six for adverse possession of the land within the cul-de-sac occupied by the structures and features constructed by plaintiffs; and count seven for adverse possession of the entire cul-de-sac.[4] Between April 12 and April 13, 2021, the action proceeded to a nonjury trial at which the court heard testimony from Mr. O'Keefe, defendants, and Charee Jackson, an engineer with surveying experience. Thereafter, the parties filed post-trial memoranda and the trial justice issued a written decision.

---

[4] The plaintiffs did not press their other claims at trial and unambiguously waived "[a]ll other claims set forth in the amended complaint" i.e., count three for a declaratory judgment; count four for reimbursement for maintenance of the private road; and count five for permanent injunctive relief commanding defendants to relocate all components of the private road.

The trial justice made findings of fact and assessed the credibility of the evidence. She articulated the standard for granting preliminary injunctive relief, noting that the court was required to consider whether plaintiffs were reasonably likely to succeed on the merits, would suffer irreparable harm, had to balance the equities, and assess whether granting the injunction would preserve the status quo. The trial justice found that plaintiffs had not shown a likelihood of success on the merits because a cotenant may become a trespasser only by ousting their cotenants, and they failed to demonstrate that defendants' obstructions were so unreasonable as to effectively oust plaintiffs from the platted road.

The trial justice found that plaintiffs had failed to establish that they would suffer irreparable harm because most of the obstructions had been removed from the platted road.[5] She determined that the balance of the equities did not favor injunctive relief because there was no evidence that plaintiffs would suffer hardship, but there was evidence that defendants would suffer if forced to undertake additional road maintenance. Further, she determined that injunctive relief would not preserve the status quo because granting injunctive relief would disrupt the effective system that defendants had already instituted for maintenance. Having evaluated the relevant

---

[5] While plaintiffs initially sought both preliminary and permanent injunctive relief, at trial they only proceeded on their request for a permanent injunction and waived all other claims set forth in their amended complaint.

factors, the trial justice denied plaintiffs' request for issuance of a permanent injunction under counts one and two of the amended complaint.

Thereafter, the court addressed plaintiffs' adverse-possession claims. The trial justice emphasized that there is a heightened burden for a plaintiff to acquire property by adverse possession over a cotenant. Therefore, because plaintiffs had failed to establish by strict proof that they effectively excluded defendants from using and enjoying the private road as cotenants, the trial justice found that plaintiffs' claims failed as a matter of law. Judgment subsequently entered in favor of defendants on all of plaintiffs' remaining claims.[6] The plaintiffs filed the present appeal.[7]

### Standard of Review

"This Court accords 'great deference to the findings of fact of a trial justice sitting without a jury, and will disturb such findings only when the justice misconceives or overlooks material evidence or otherwise is clearly wrong.'" *Athena Providence Place v. Pare*, 262 A.3d 679, 681 (R.I. 2021) (quoting *Whittemore v. Thompson*, 139 A.3d 530, 540 (R.I. 2016)). "A judgment in a nonjury case will be

---

[6] The trial justice also addressed and denied Ms. York's crossclaim and requests for relief, however, she did not appeal those decisions, and she has not participated in the present appeal.

[7] Although plaintiffs filed their notice of appeal prior to entry of the final judgment, we treat a premature appeal as if it had been timely filed. *See Murray v. Jones*, 250 A.3d 562, 564 n.2 (R.I. 2021) (holding that premature notice of appeal valid where final order later entered).

reversed on appeal when it can be shown that the trial justice misapplied the law." *Id.* (brackets omitted) (quoting *E.W. Burman, Inc. v. Bradford Dyeing Association, Inc.*, 220 A.3d 745, 753 (R.I. 2019)).

Likewise, "[w]hen reviewing the grant or denial of a permanent injunction, [this Court] will reverse the lower court on appeal only when it can be shown that the trial justice misapplied the law, misconceived or overlooked material evidence or made factual findings that were clearly wrong." *Martin v. Wilson*, 246 A.3d 916, 923 (R.I. 2021) (quoting *JHRW, LLC v. Seaport Studios, Inc.*, 212 A.3d 168, 175 (R.I. 2019)). "The issuance and measure of injunctive relief rest in the sound discretion of the trial justice." *Id.* at 923-24 (quoting *Cullen v. Tarini*, 15 A.3d 968, 981 (R.I. 2011)). "On review, the decision of the trial court made in the exercise of a discretionary power should not be disturbed unless it clearly appears that such discretion has been improperly exercised or that there has been an abuse thereof." *Id.* at 924 (quoting *Cullen*, 15 A.3d at 981).

**Discussion**

On appeal, plaintiffs challenge the denial of their request for injunctive relief. Specifically, they argue that the trial justice erred in her application of an injunctive analysis to their trespass claims because they were effectively ousted by defendants' obstructions. They maintain that the trial justice concluded in error that the trespasses by the Reardons and the Jameses were abated. According to plaintiffs,

Robert James removed the obstructions in the commonly held road only in response to the filing of the lawsuit. The plaintiffs take issue with the lower court's analysis of the preservation of the status quo, because without an injunction, defendants are "free to expand their obstructions * * *." In response, defendants maintain that the trial justice's findings should not be disturbed because plaintiffs did not present credible evidence of trespass or obstructions in the private road. We agree.

It is well settled that the "party seeking injunctive relief must demonstrate that it stands to suffer some irreparable harm that is presently threatened or imminent and for which no adequate legal remedy exists to restore that plaintiff to its rightful position." *Hebert v. City of Woonsocket by and through Baldelli-Hunt*, 213 A.3d 1065, 1077 (R.I. 2019) (quoting *Nye v. Brousseau*, 992 A.2d 1002, 1010 (R.I. 2010)). "One of the most common illustrations [of irreparable harm] is that of a continuing trespass interfering with an interest in property." *R.I. Turnpike & Bridge Authority v. Cohen*, 433 A.2d 179, 182 (R.I. 1981). Therefore, "we have generally held that the appropriate remedy for a continuing trespass is injunctive relief." *Rose Nulman Park Foundation ex rel. Nulman v. Four Twenty Corp.*, 93 A.3d 25, 29 (R.I. 2014); *see also City of Providence v. Doe*, 21 A.3d 315, 319 (R.I. 2011) (noting the different standard for granting injunctive relief in a continuing trespass case). "[T]his general rule is not absolute and * * * in exceptional cases, a court may, in its

discretion, decline to follow it where the injunctive relief would operate oppressively and inequitably." *Rose Nulman Park Foundation*, 93 A.3d at 29.

"[O]ne cotenant by an entry upon the common property does not *ipso facto* become a trespasser." *Buchanan v. Jencks*, 38 R.I. 443, 446, 96 A. 307, 309 (1916). Cotenants may "make any reasonable use of the land held, so long as it does not operate to exclude the other tenants from enjoying their equal privileges." *Manchester v. Pereira*, 926 A.2d 1005, 1013 (R.I. 2007) (quoting *Silvia v. Helger*, 75 R.I. 397, 399, 67 A.2d 27, 28 (1949)). Therefore, to be liable for trespass, the cotenant must commit an ouster or destroy the commonly held property. *See Buchanan*, 38 R.I. at 446, 96 A. at 309. When a cotenant's trespass is continuing, it "wrongfully interferes with the legal rights of the owner, and in the usual case those rights cannot be adequately protected except by an injunction which will eliminate the trespass." *See Santilli v. Morelli*, 102 R.I. 333, 338, 230 A.2d 860, 863 (1967) (quoting *Ferrone v. Rossi*, 42 N.E.2d 564, 566 (Mass. 1942)).

The trial justice found that there was no evidence presented that defendants ousted plaintiffs from the private road. Rather, the record reflects that the parties can make use of the private road and that defendants were willing to remove obstructions that could interfere with their cotenants' rights. The plaintiffs' argument that the obstructions in the platted road were alone sufficient to show continuing trespass ignores the fact that the platted road was held in common by

- 11 -

plaintiffs and defendants. Accordingly, the trial justice did not misapply the law, misconstrue the evidence, or clearly err in denying plaintiff's request for injunctive relief because there was no evidence that defendants' obstructions excluded plaintiffs from enjoying their equal privileges in the platted road. *See Buchanan*, 38 R.I. at 446, 96 A. at 309; *Manchester*, 926 A.2d at 1013.

The plaintiffs also take issue with the trial justice's use of the preliminary injunction factors when deciding whether to grant their request for a permanent injunction. Although the trial justice articulated the standard for a preliminary injunction as opposed to evaluating the propriety of injunctive relief in a continuing trespass case, she ultimately found that there was no prima facie evidence of a continuing trespass. *See, e.g.*, *Rose Nulman Park Foundation*, 93 A.3d at 29-30 (articulating the general rule and the exceptions). The trial justice balanced the equities and found that the alleged encroachments did not substantially interfere with plaintiffs' use of the platted road and that granting injunctive relief would cause considerable hardship to defendants. *Id.*; *see also Paolino v. Ferreira*, 153 A.3d 505, 515-16 (R.I. 2017) (finding that the trial justice did not err in balancing the equities in a continuing trespass case when there were exceptional circumstances that merited the withholding of coercive relief). Therefore, we discern no error.

With respect to their claims of adverse possession, plaintiffs assert that they proved the elements to support their claims related to the cul-de-sac and that the trial

justice's decision was in error. For their part, defendants contend that the findings related to adverse possession were also well-supported, and they ask this Court to affirm the denial of their claims.

We have held that "[a] party may acquire land pursuant to the doctrine of adverse possession 'when the elements identified in the General Assembly's codification of this method of acquisition are met.'" *Union Cemetery Burial Society of North Smithfield v. Foisy*, 292 A.3d 1205, 1214 (R.I. 2023) (quoting *Clark v. Buttonwoods Beach Association*, 226 A.3d 683, 690 (R.I. 2020)). "[A] claimant must prove actual, open, notorious, hostile, continuous, and exclusive use of [the] property under a claim of right for at least a period of ten years."[8] *Id.* (quoting *Clark*,

---

[8] General Laws 1956 § 34-7-1 provides:

> "Where any person or persons, or others from whom he, she, or they derive their title, either by themselves, tenants or lessees, shall have been for the space of ten (10) years in the uninterrupted, quiet, peaceful and actual seisin and possession of any lands, tenements or hereditaments for and during that time, claiming the same as his, her or their proper, sole and rightful estate in fee simple, the actual seisin and possession shall be allowed to give and make a good and rightful title to the person or persons, their heirs and assigns forever; and any plaintiff suing for the recovery of any such lands may rely upon the possession as conclusive title thereto, and this chapter being pleaded in bar to any action that shall be brought for the lands, tenements or hereditaments, and the actual seisin and possession being duly proved, shall be allowed to be good, valid and effectual in law for barring the action."

226 A.3d at 690). "The party asserting title by adverse possession 'must establish the required elements by strict proof, that is, proof by clear and convincing evidence.'" *Id.* (quoting *Clark*, 226 A.3d at 690-91).

Ordinarily, when considering the open and notorious elements, we "inquire[] whether the party claiming ownership by adverse possession used the property in a manner consistent with how owners of similar property would use such land and whether these uses were inclined to attract attention sufficient to place the world on constructive notice." *Union Cemetery Burial Society*, 292 A.3d at 1215 (quoting *Clark*, 226 A.3d at 691). However, stronger evidence of notice is required to prove adverse possession against a cotenant. *See Gammons v. Caswell*, 447 A.2d 361, 367-68 (R.I. 1982); *Spangler v. Schaus*, 106 R.I. 795, 805, 264 A.2d 161, 166 (1970). "One who claims title by adverse possession as against a cotenant must demonstrate, by clear and convincing evidence, acts of possession that are 'not only inconsistent with but in exclusion of the continuing rights of the other cotenants.'" *M & B Realty, Inc. v. Duval*, 767 A.2d 60, 65 (R.I. 2001) (quoting *Spangler*, 106 R.I. at 805, 264 A.2d at 166).

In this case, plaintiffs did not provide notice to defendants of their claim regarding the cul-de-sac. The defendants were never told by plaintiffs that they could not use the cul-de-sac, nor did they have any issues when they did pass through. In addition, plaintiffs' dogs were rarely seen outside, and defendants did

not experience any difficulty traveling through the area due to their presence. The testimony and evidence on the record shows that defendants regularly used the cul-de-sac and believed it was their right to do so. For example, Robert James testified that he frequently ran through the area during his night runs, and also drove through it with his pickup truck, farm equipment, and motorcycle. Moreover, he was not deterred by the dogs and found it relatively easy to maneuver around the area. Likewise, Jennifer James regularly walked, ran, or drove through the cul-de-sac. The trial justice was unpersuaded that defendants were ousted from the area, and her findings were amply supported by the record. We find no error in the trial justice's decision to deny plaintiffs' claims for adverse possession related to the cul-de-sac.

## Conclusion

For the reasons set forth in this opinion, the judgment of the Superior Court is affirmed. The papers may be remanded to the Superior Court.


Chief Justice Suttell and Justice Long did not participate.

# STATE OF RHODE ISLAND

## SUPREME COURT – CLERK'S OFFICE
Licht Judicial Complex
250 Benefit Street
Providence, RI  02903



## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Merlyn P. O'Keefe et al. v. Myrth York et al. |
| **Case Number** | No. 2022-309-Appeal.<br>(WC 18-327) |
| **Date Opinion Filed** | February 22, 2024 |
| **Justices** | Goldberg, Robinson, and Lynch Prata, JJ. |
| **Written By** | Associate Justice Erin Lynch Prata |
| **Source of Appeal** | Washington County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Sarah Taft-Carter |
| **Attorney(s) on Appeal** | For Plaintiffs:<br><br>Merlyn P. O'Keefe, Esq. |
| | For Defendants:<br><br>William R. Landry, Esq. |